488 So.2d 368 (1986)
Frannon H. DYKES, Jr., Plaintiff-Appellee,
v.
Patricia E. DYKES, Defendant-Appellant.
No. 85-506.
Court of Appeal of Louisiana, Third Circuit.
May 14, 1986.
Writ Denied June 20, 1986.
Michael W. Shannon and Chris J. Roy, Alexandria, for defendant-appellant.
*369 Robert L. Kennedy, Colfax, for plaintiff-appellee.
Before DOUCET, LABORDE and BOND[*], JJ.
W. ELLIS BOND, Judge Pro Tem.
This is an appeal from an award of custody of a five year old boy.
The parties were married in 1973 and separated in December 1983. Three children, boys ages 10 and 5 years and a girl age 9 years, are issue of the marriage. Upon trial of a rule for custody soon after the separation, the parties stipulated that custody of the 10 year old son be awarded to the father and the two younger children to the mother. The same arrangement was agreed upon when a legal separation was granted to Mr. Dykes on April 2, 1984.
Mrs. Dykes was granted the use of the family home in Grant Parish shortly after the initial separation and continued to live there at the time of trial of this matter. Mr. Dykes' petition for final divorce and custody of all the children came on for trial on January 2, 1985. The issue of divorce was tried without opposition and the custody issue was deferred until January 25, 1985. Mrs. Dykes remarried on the day of the divorce.
The facts are undisputed that Mrs. Dykes entered into an affair of the heart with another man during mid-1984, after the legal separation. Her suitor visited in her home more or less nightly, often remaining until 5:00 or 6:00 A.M.
The trial court stated its findings of fact to be:
"The only proper inquiry for the Court here is to determine what environment would be in the best interest of the children. In this regard, only the evidence which bears directly on this issue may properly be considered. In determining what is in the best interests of the children, the law is clear that the welfare and happiness of the children are the paramount considerations. Ferry v. Ferry, 433 So.2d 359 (La.App. 3rd Cir.1983); Howes v. Howes, 388 So.2d 1182 (La.App. 4th Cir.1980); Greer v. Greer, 346 So.2d 846 (La.App. 1st Cir.1977); Jones v. Timber, 247 So.2d 207 (La.App. 1st Cir. 1971)."
"The evidence shows that Patricia has committed numerous acts of adultery during her separation from Frannon, with the same paramour. This fact was admitted by Patricia, who candidly testified that these affairs were not in the presence of the children and were discrete. The evidence further shows that Patricia has married the man with whom she had these affairs."
"Regarding the issue of adultery, the law is clear that the occurrence of adultery is relevant only to the extent that such behavior is damaging to the children, and such behavior must be viewed in light of the totality of circumstance under which the child is living. Howes v. Howes; Monsour v. Monsour, 347 So.2d 203 (La.1977). Among the circumstances which should be considered are whether the children were aware of the illicit relationship, whether sex play occurred in the presence of the children, whether the furtive conduct was notorious and brought embarrassment to the children, what effect the conduct had on the family home life, and whether the conduct was so flagrant that it reveals an utter lack of regard for the moral principles held by members of society. Howes; Monsour."
"Although adultery is a serious moral transgression, the harmful impact of it in the instant case is mitigated by the fact that the adultery occurred after Patricia was legally separated from Frannon, that the adultery was limited to one partner, and that the defendant has married her partner. In considering the surrounding circumstances, the evidence shows that the relationship was notorious *370 enough so that the children were aware of it, but the evidence fails to show it was so notorious and flagrant that it brought embarrassment upon the children, or that it amounted to a gross deviation from societal norms."
"The defendant's relationship with her partner, Mr. Malone, can almost be described as the `live-in' type. The evidence alone shows that Mr. Malone frequently spent the night with Patricia and her two youngest children, at the family home. In all fairness it must be pointed out that although the evidence shows that Mr. Malone frequently spent the night there, the evidence also shows that he was almost always gone before the children awoke the next morning. This fact is significant, because while the children certainly knew that mommy was being visited by another man, they did not know for sure if mommy was actually going to bed with him. Perhaps more importantly, this serves to show that Patricia was concerned with the moral well-being of her children. By taking measures to see that Mr. Malone was gone by morning, the defendant has demonstrated that in spite of how immoral her conduct was, she still cared enough to at least try to hide her conduct from her children. This does not excuse her conduct, but it does bear out her attitude toward her children, and in this regard, it is a relevant consideration."
"The court realizes, that the home environment being provided by Patricia is far from being pure; nevertheless, it can hardly be condemned as morally bankrupt. Just how wholesome an environment was being provided is difficult to judge."
"According to the uncontradicted testimony of Patricia, she would spend a great deal of quality time with her children. She avows that she is a very attentive mother who is very loving and caring toward her children. Patricia explains that she is deeply concerned about the emotional well-being of her children, and she places special emphasis on the importance of love. Regarding the training of her children, Patricia espouses to be firm and strict with them, and she maintains that she teaches them good values and right from wrong."
"On the whole, Patricia appears to be able to provide her children with a decent environment conducive to rearing, notwithstanding her recent transgressions. But these transgressions cannot be erased from the memory of those concerned, nor ignored. Thus, it will be given appropriate weight along with all the other factors."
"Returning again to the issue of what is in the best interest of the children, factors such as the children's psychological make-up, the sensitivity of the children, the connexity between the children and their parents and among each other, the sex of the children and the children's expressed preferences, were carefully analyzed and weighed. These factors along with the circumstances of adultery form the foundation of this Court's opinion. These factors take into consideration much of the evidence presented at trial, including the testimony of both parties, the testimony of an expert psychologist who examined the children, and the testimony of other witnesses. Also the Court took into consideration and gave some weight to the Court's own knowledge and experience on the subject."
The court's disposition of the custody issue was:
"Liddie Marie is perhaps the most sensitive of the children and, understandably, has endured the most suffering. She is the only girl born of the marriage and is extremely close to her mother. Having always lived with her mother, she has come to enjoy the very special and secure mother-daughter relationship. To break apart these bonds would be very destabilizing, and according to Dr. Lonowski, could be emotionally devastating. However, it is also the doctor's opinion that she has a special need for the guidance of her father. Thus, it is the opinion of the court that Liddie Marie be maintained in the domiciliary custody of her *371 mother, subject to liberal visitation with her father."
"If Liddie Marie is the most sensitive, then by contrast Donny Monroe must be considered the least sensitive. In the words of Dr. Lonowski, he is generally oblivious to it all. Perhaps his age and an ignorance has insulated him. For whatever reason, he is better able to adjust. He seems to know what he wants and would seem to prefer living with his brother and father. Although Dr. Lonowski concluded that it might be better to keep Donny and his sister under the same roof, the Court does not foresee any real harm in placing him with his brother and father. The Court believes that the two brothers should not have been split apart to begin with. Similarly, the Court does not particularly want to split apart a brother and a sister. Regrettably, there has to be a split, and at this time it would seem to be in the best interest of Donny Monroe to place him with his older brother. Thus, it is the opinion of the Court that Donny Monroe be placed in domiciliary custody of his father, subject to liberal visitation with his mother. Because of his young age, he needs to see his mother quite often."
Counsel for the parties invited the court to interview the two younger children in chambers at the conclusion of the trial, waiving counsel's presence and any objection thereto. The statement of the court regarding Donny's preference demonstrates that this was done with no record having been made of the testimony of the children. Our brothers of the Court of Appeal, Fifth Circuit, have ably discussed the dangers inherent in such a proceeding. Watermeier v. Watermeier, 462 So.2d 1272, (La.App. 5th Cir.1985), writ denied 464 So.2d 301 (La.1985). It is incumbent upon the court to first determine the competency of a witness when a child is called to testify. The age of a minor child is not a bar to its testimony when it is otherwise shown to possess a proper understanding, and testimony in chambers is encouraged in custody proceedings to relieve the child of the possibly intimidating presence of the mother and father. C.C. art. 146. Even though the presence of counsel was waived in this instance, with no record having been made of the proceeding we are without means of review of the competency of the witnesses or the reliability of any stated preferences as to custody. We agree with our brothers of the Fifth Circuit that such an interview must be conducted with a reporter present and a record made of the questioning by the court and the answers of the witnesses.
We note also that a child of five years of age is not capable of a judgmental decision in the best interests of its welfare, and a court should not make a custody decision based upon its stated preferences. Pierce v. Pierce, 213 La. 475, 35 So.2d 22 (1948).
The facts demonstrate, and the trial court accepted, that this five year old child had a close relationship with its older sister; the uncontroverted testimony of an expert child psychologist was that it would be harmful to separate Liddie Marie and Donny. We have previously held that though the presumption in favor of the mother in child custody cases has been abrogated and been replaced with consideration of the child's best interests, the fact remains that in many, if not most, family circumstances, it is often in the best interest of young children to be placed in the care of their mother. Patel v. Moody, 434 So.2d 681 (La.App. 3rd Cir.1983).
We believe the record supports the trial court's finding that the mother is now able to provide her children with a decent atmosphere conducive to rearing, and the decision to leave Liddie Marie residing with her is appropriate under the circumstances. The decision to separate Donny from his mother and sister, with whom he has resided all his life, for the stated reason of reuniting him with his older brother, appears to be more in the nature of expressing disapproval of the mother's past conduct. There is no showing of any close relationship between this very young child *372 with his father or older brother, while the evidence is positive of a very close relationship with his mother and sister.
This child is now not old enough to participate in the manly pursuits of hunting and fishing enjoyed by his father and older brother. His need for loving care provided by his mother presently outweighs the desirability of a more religious atmosphere provided by his father. The borderline intelligence of Donny noted by the psychologist will require careful observation and nurturing. An attentive mother is more important at this stage in life than any advantage to be expected simply by placing him in the same home with his older brother. The difference in their ages suggests entirely different interests and pursuits.
We are convinced that the decision to place Donny in the physical custody of his father was based upon a consideration of the mother's prior adultery. The court erred in failing to give adequate weight to the "reformation" rule which applies to a situation such as this. The jurisprudence is now clear that when a parent terminates an adulterous relationship either by ceasing the immoral behavior or by marrying the paramour, that reformation obliterates that parent's previous indiscretion and can no longer be a factor in determining that parent's fitness for custody. Barton v. Minton, 484 So.2d 317, (La.App. 3rd Cir. 1986). See also Shackleford v. Shackleford, 389 So.2d 825 (La.App. 3rd Cir.1980); Fulco v. Fulco, 259 La. 1122, 254 So.2d 603 (1971); Monsour v. Monsour, 347 So.2d 203 (La.1977); Cleeton v. Cleeton, 383 So.2d 1231 (La.1980); and, Atteberry v. Atteberry, 379 So.2d 18 (La.App. 3rd Cir. 1979), writ granted, 381 So.2d 1231 (La. 1980), writ denied, 386 So.2d 94 (La.1980).
For the foregoing reasons the decision of the trial court granting the care, custody and control of the minor, Donny Monroe Dykes, to his father, Frannon H. Dykes, Jr., is reversed and said custody is granted to the mother, Patricia E. Dykes. In all other respects the judgment of the trial court is affirmed. We further order that the physical custody of Donny be returned to his mother immediately.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
NOTES
[*] Judge W. Ellis Bond of the 14th Judicial District Court appointed to this court pro tempore by the Supreme Court.