733 So.2d 1261 (1999)
David O. HICKS, Sr., Plaintiff-Appellee,
v.
Teresa L. HICKS, Defendant-Appellant.
No. 98-1527.
Court of Appeal of Louisiana, Third Circuit.
May 19, 1999.
*1262 Bradley O. Hicks, Leesville, for David O. Hicks, Sr.
Daniel M. Landry, III, Lafayette, for Teresa L. Hicks.
BEFORE: DOUCET, C.J., THIBODEAUX, COOKS, WOODARD, and AMY, Judges.
WOODARD, Judge.
Ms. Teresa Hicks, defendant in this divorce suit, appeals a judgment awarding primary residency of all three of her minor children to her husband, Mr. David Hicks. Ms. Hicks testified that Mr. Hicks had a history of being physically violent with her during the marriage. Finding that the trial court made a legal error in failing to apply the Post-Separation Family Violence Relief Act, La.R.S. 9:364, we reverse the award of joint custody to both parents, assigning residency during the school year to Mr. Hicks and the summer months to Ms. Hicks. In compliance with the Post-Separation Family Violence Relief Act, we award custody of the three children to Ms. Hicks and order that all visitation by Mr. Hicks be supervised until such time that he has satisfied all requirements of said Act.

FACTS
Mr. and Ms. Hicks married in 1982. They separated in December of 1997, and Mr. Hicks filed for divorce on December 18, 1997. Pursuant to their mutual agreement, Mr. Hicks petitioned to have joint custody of the three children be awarded to both parents, the primary domicile of Nicole, almost fourteen, to be with Mr. Hicks, and the primary domiciles of David, Jr., age seven, and Kristin, age twentythree months, to be with Ms. Hicks.
Accordingly, Ms. Hicks accepted temporary lodging with a family friend and subsequently moved with David, Jr. and Kristin to Indiana, where she has relatives, and then to Canada, approximately two hours away. On January 6, 1998, Mr. Hicks filed a supplemental petition, seeking custody of all three children. He alleged that the two older children were enrolled in school in Vernon Parish; that Nicole had specifically requested that she be allowed to remain there, where she was involved in many school activities; that Ms. Hicks moved frequently; and that he could provide a more stable environment.
Ms. Hicks reconvened in March of 1998. She sought and was granted a restraining order against Mr. Hicks because of his alleged previous acts of violence. She also requested custody of all three children and possession of certain community property. At trial in May of 1998, Ms. Hicks testified that she had established herself and the two small children in a home in Canada with a family which had offered her assistance. Having been a seamstress and babysitter, she also became a housekeeper and grounds keeper and was allowed to live in the home rent free until her financial situation improved.
*1263 Nicole had remained with her father, who was a logger in Vernon Parish, as she was very active in school related activities, such as cheerleading and softball management. Ms. Hicks' March 1998 reconventional demand stated that she and Nicole had decided that it was in Nicole's best interest that she now live with her mother. However, at trial in May of 1998, Ms. Hicks testified that she wanted to do what was best for Nicole and wanted to consider Nicole's own wishes, as well, in light of her school activities and interests. She indicated that her ultimate concern was that the three children maintain visitation with each other. The trial judge took testimony from Nicole in chambers with attorneys for both parties present but did not record the testimony.
Ms. Hicks testified at trial that, during the marriage, Mr. Hicks had been violent with her in the following ways:
(1) More than once, he has hit her in the stomach while she was pregnant, causing her to have miscarriages.
(2) More than once, he has broken brooms over her.
(3) He has picked her up with a two by four under her neck and thrown her off the porch.
(4) He has forced her to have sex with him several times against her will.
(5) He has grabbed her hand and squeezed it so hard into a ring she was wearing that the ring was almost broken, causing an indentation in her finger.
(6) He has hit her in the face, giving her a black eye.
(7) He has thrown her into a chair which caused her to hit her head against their fish tank.
(8) He has hit her in the mouth, breaking her teeth.
There was conflicting testimony regarding acts (5) through (8) above. However, acts (1) through (4) were not rebutted by any testimony from Mr. Hicks or witnesses on his behalf.
In July of 1998, although the trial judge made a finding that Mr. Hicks had been abusive towards his wife, he awarded custody of all three children to Mr. and Ms. Hicks jointly, designating Mr. Hicks as their primary custodian during the school year and Ms. Hicks their primary custodian during the summer months. In his written reasons, the trial judge stressed the importance of keeping the children together in a stable environment. He did not apply the Post-Separation Family Violence Relief Act but went directly to the twelve factors of La.Civ.Code art. 134 and found that it was in the best interest of the children that they live in Vernon Parish with their father.

ASSIGNMENTS OF ERROR
Ms. Hicks alleges the following assignments of error:
1. The trial court erred in failing to apply the standards under La.R.S. 9:362 concerning child custody where there is a history of family violence.
2. The trial court erred in taking testimony of a minor child in chambers without a reporter to transcribe the testimony.

LAW
Custody in this case turns on whether the Post-Separation Family Violence Relief Act, La.R.S. 9:361-369, should have been applied. This Act's purpose and significance are better understood in the context of its historical landscape.
Domestic violence has been recognized as one of this nation's great problems. Congress noted that it is estimated that at least two million women each year are battered by an intimate partner and that crime data from the Federal Bureau of Investigation records reveals that about 1,500 women are murdered by husbands or *1264 boyfriends each year.[1] After Congressional hearings were held, recognizing these and other disturbing family violence occurrences, on October 27, 1992, President George Bush signed into law the Battered Women's Testimony Act of 1992, 42 U.S.C. § 10702. The Act authorized a study of the admissibility of expert testimony concerning battered women and mandated the development of training materials to assist courts with Battered Women's Syndrome expert testimony.[2] In 1994, Congress passed the Violence Against Women Act (codified, as amended, in scattered sections of 16, 18, 42 U.S.C.) This act established a new civil rights cause of action for women who have been the victims of gender-motivated violent crimes.[3] Further, purchase or ownership of a gun by anyone convicted of a misdemeanor of a domestic violence offense has been prohibited by the Domestic Violence Offenders Gun Ban Act of 1996, 18 U.S.C. § 922(g)(9).
Consistent with this national trend in the federal government and the state governments in 1992, the Louisiana legislature enacted the Post-Separation Family Violence Relief Act, La.R.S. 9:361-369.[4] The Act provides protection for the battered spouse and her children in several ways. Application of the Act is mandatory when there has been one serious injury, resulting from abuse, or simply more than one act of violence during the marriage. The court is not permitted to award custody or unsupervised visitation with the children to the perpetrator of violence until the perpetrator has completed a treatment program. If both parents have a history of spouse abuse, custody is to be awarded to the parent less likely to continue the domestic violence. Most importantly for our decision in the instant case, the Act creates a statutory presumption against awarding sole, or joint, custody to the perpetrator of domestic violence.
Because we find reversible legal error in the trial court's failure to apply the provisions of La.R.S. 9:361, et.seq., to the facts in this case, we will conduct a de novo review of the record and render judgment on the merits. Jenkins v. Rougeau, 97-257 (La.App. 3 Cir. 10/8/97); 702 So.2d 841, writ denied, 97-2849 (La.1/30/98); 709 So.2d 715; White v. State Farm Mut. Auto. Ins. Co., 97-1704 (La.App. 3 Cir. 4/29/98); 713 So.2d 618, writ denied, 98-1429 (La.7/2/98); 724 So.2d 741.

POST-SEPARATION FAMILY VIOLENCE RELIEF ACT
The uncontradicted facts in this case establish sufficient acts of violence, which Mr. Hicks committed against Ms. Hicks, to trigger application of the Post-Separation Family Violence Relief Act. It is well settled that the trier of fact must accept uncontradicted testimony as true, even if it comes from a party, unless circumstances in the record cast suspicion on the reliability of the testimony. Rideaux v. Franklin Nursing Home, 95-240 (La. App. 3 Cir. 11/22/95); 664 So.2d 750, writ *1265 denied, 95-3093 (La.2/16/96); 667 So.2d 1058. There is no evidence in the record which would cast suspicion that the following acts of violence were not committed by Mr. Hicks against his wife, namely: that he hit her while she was pregnant, causing her to have miscarriages; that he has broken several brooms over her; that he has picked her up with a two by four under her neck and thrown her off the porch; and that he has forced her to have sex with him several times against her wishes. We note that forced sex between a husband and a wife is considered rape, a battery. State v. Probst, 623 So.2d 79 (La.App. 1 Cir.), writ denied, 629 So.2d 1167 (La. 1993).
The relevant provisions of La.R.S. 9:364 state:
A. There is created a presumption that no parent who has a history of perpetrating family violence shall be awarded sole or joint custody of children. The court may find a history of perpetrating family violence if the court finds that one incident of family violence has resulted in serious bodily injury or the court finds more than one incident of family violence. The presumption shall be overcome only by a preponderance of the evidence that the perpetrating parent has successfully completed a treatment program as defined in R.S. 9:362, is not abusing alcohol and the illegal use of drugs scheduled in R.S. 40:964, and that the best interest of the child or children requires that parent's participation as a custodial parent because of the other parent's absence, mental illness, or substance abuse, or such other circumstances which affect the best interest of the child or children. The fact that the abused parent suffers from the effects of the abuse shall not be grounds for denying that parent custody.
. . . .
C. If the court finds that a parent has a history of perpetrating family violence, the court shall allow only supervised child visitation with that parent, conditioned upon that parent's participation in and completion of a treatment program. Unsupervised visitation shall be allowed only if it is shown by a preponderance of the evidence that the violent parent has completed a treatment program, is not abusing alcohol and psychoactive drugs, and poses no danger to the child, and that such visitation is in the child's best interest.
(Emphasis added.)
As this statute is clear and unambiguous, it is to be applied, to the facts in this case and in similar future cases, as written. La.Civ.Code art. 9. Only in this way, can the remedial purposes of the Act, which are to protect battered spouses and their children and insure counseling for those who commit acts of domestic violence, be achieved.
In Simmons v. Simmons, 26,414 (La. App. 2 Cir. 1/25/95); 649 So.2d 799, 802, that court stated its view of some criteria by which to determine the application of the Act:
In deciding whether a parent has a "history of perpetrating family violence," the trial court should look at the entire chronicle of the family, remaining mindful that the paramount goal of the legislation is the children's best interest. Such factors as the number, frequency, and severity of incidents will be relevant, as well as whether the violence occurred in the presence of the children, and to what extent there existed provocation for any violent act. Stated differently, the determination must be based on a review of the total circumstances of the family, and necessarily involves a weighing of the evidence.
(Emphasis added.)
We note that the second circuit reads into the statute that a reviewing court, in the application of the Act, should consider "whether the violence occurred in the presence of the children" and "to what extent there existed provocation for any *1266 violent act." We expressly reject that language as being inconsistent with the mandate of the Act and its remedial purposes. It is also inconsistent with the requirements of La.Civ.Code art. 9 that the Act be applied as written.
Once this Act has been triggered, we do not look to the La.Civ.Code art. 134 factors relating to the best interest of the children until the perpetrator has satisfied all requirements delineated in the Act.
Turning to the facts of the case before us, for purposes of analyzing whether the trial judge erred in not applying the Act, we have discounted those acts of violence which Mr. Hicks contradicted, even though Mrs. Hicks provided corroborating evidence for some of them. The only acts we have considered in this review are those which Mr. Hicks did not refute, namely: that he caused the deaths of unborn children; he beat her with brooms; he picked her up with a two by four under her neck and threw her off the porch; he forced her to have sex against her will, on numerous occasions. When such testimony is unrefuted, Ms. Hicks did not have to bring forth corroborating evidence. See generally Chargois v. Guillory, 97-439 (La.App. 3 Cir. 10/29/97); 702 So.2d 1068. Nevertheless, she did do so concerning the black eye, the bruises she sustained from time to time, and Mr. Hicks having beaten her with a broom stick on at least one occasion, causing her face to be swollen beyond recognition. For example, her mother testified that one night Ms. Hicks came to her, hysterical and unrecognizable.
[S]he came through the door and ... I just looked at her, I didn't even recognize her and I just went on with what I was doing and she said, mother, and, I turned around and looked at her, and I said, oh my goodness, I didn't use quite that word, but she was hysterical. Her eyes were swollen, she was just totally upset. I went up to her and I said, what's wrong and she showed me her back and her arm and I said, what happened and how did you do that? She told me that he had hit her with a broom stick....
Ms. Hicks' mother testified that, also, she had seen bruises on her daughter at other times.
Other corroborating evidence included the testimony of an elderly gentleman, a nonrelative, Mr. Minze, who testified that he saw Ms. Hicks right after Mr. Hicks gave her the black eye and that Mr. Hicks admitted to him that he had done it.
Without considering these corroborated acts of violence, Ms. Hicks has, nevertheless, satisfied her burden of proof under the Act. She has proved, by a preponderance of the evidence, that Mr. Hicks committed, at least, one act of violence against her, resulting in a serious injurythe beatings while she was pregnant which caused miscarriages, resulting in the deaths of unborn children. She also proved more than two acts of violence which were not refuted. The Act only requires one serious act of violence resulting in serious injury, or simply, more than one act of violence to establish a history of violence and to create a presumption that no parent, who has a history of perpetrating family violence, shall be awarded sole or joint custody of children. "The presumption shall be overcome only by a preponderance of the evidence that the perpetrating parent has successfully completed a treatment program...." La.R.S. 9:364(A). Mr. Hicks did not rebut this presumption.
The Post-Separation Family Violence Relief Act, La.R.S. 9:361-369 is clearly applicable in this case. The trial court's failure to apply it requires us to reverse its decision. We award custody of the three children to Ms. Hicks and order that all visitation by Mr. Hicks shall be under supervised conditions until he can prove to the trial court that he has satisfied all requirements of the Act.

THE FAILURE TO RECORD NICOLE HICKS' TESTIMONY IN CHAMBERS
Ms. Hicks contends that the trial court erred in taking testimony of the *1267 minor children in chambers without a record for review by the court. The trial record reflects that the first witness called was Nicole Hicks, age fourteen, and the court recessed to hear her testimony in chambers, out of the presence of her parents, and in the presence of both parties' attorneys. However, there is no transcript of her testimony in the record, and the record reflects that there was no recording of that testimony.
Because of our decision regarding the first assignment of error, it is unnecessary for us to render a decision concerning the second assignment of error. However, we note that the law in this circuit requires that an "in chambers" interview of a child in a child custody case "must be conducted with a reporter present and a record made of the questioning by the court and the answers of the witnesses." Dykes v. Dykes, 488 So.2d 368, 371 (La.App. 3 Cir.), writ denied, 489 So.2d 1278 (La.1986), (emphasis added.); see also Watermeier v. Watermeier, 462 So.2d 1272 (La.App. 5 Cir.), writ denied, 464 So.2d 301 (La.1985). It is not harmless error, as such action by a trial court makes impossible our ability to thoroughly and properly review the record of the trial between the parties.

CONCLUSION
The trial court erred in failing to apply the provisions of the Post-Separation Family Violence Relief Act, La.R.S. 9:361-369, to the facts in this case. Accordingly, we reverse its award of joint custody to the parents with Mr. Hicks being designated as the primary custodial parent during the school year and Ms. Hicks custodial parent during the summer. Ms. Hicks is awarded sole custody of the children. All visitation by Mr. Hicks shall be under supervised conditions until such time that he can prove to a court that he has successfully completed a treatment program and satisfied all other requirements of the Act. Mr. Hicks is cast with the costs of this appeal.
REVERSED AND RENDERED WITH INSTRUCTIONS.
DOUCET, C.J., dissents and assigns reasons.
AMY, J., dissents and joins in the reasons assigned by DOUCET, C.J.
DOUCET, Chief Judge, Dissenting.
I would affirm the judgment of the trial court. The decision in the case sub judice was based solely on the testimony of witnesses called by each side; no physical evidence was introduced. The witnesses gave conflicting testimony regarding the facts in the case.
It is well settled that, on appellate review of a factual determination, the reviewing court may not set aside the factfinder's findings of fact in the absence of error or unless they are clearly wrong. Also, where there is a conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978); Canter v. Koehring, 283 So.2d 716 (La.1973). The issue to be resolved by the reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State, Through DOTD, 617 So.2d 880 (La. 1993).
When findings are based on determinations regarding the credibility of witnesses, the manifest error clearly wrong standard demands great deference to the trier of fact's findings. For, only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Canter, supra at 724; Virgil v. American Guarantee & Liability Ins. Co., 507 So.2d 825, 826 (La.1987); Boulos v. Morrison, 503 So.2d 1, 3 (La.1987); Williams v. Keystone General Contractors, Inc., 488 *1268 So.2d 999, 1001 (La.1986); Johnson v. Insurance Co. of North America, 454 So.2d 1113, 1117 (La.1984); Berry v. Livingston Roofing Co., 403 So.2d 1247, 1249 (La.1981); Crump v. Hartford Accident & Indemnity Co., 367 So.2d 300, 301 (La.1979).
Calais Square, LTD. v. LeDoux, 98-577, pp. 4-5 (La.App. 5 Cir. 1/19/99); 722 So.2d 1214, 1216.
Further, in matters concerning the custody of children, the following is well settled:
The trial court's determination in child custody matters is entitled to "a great deal of discretion" because the trial judge has a "superior opportunity to observe the persons claiming custody and the witnesses who testified at the trial." State in the Interest of Two Minor Children, 499 So.2d 697, 700 (La. App. 3 Cir.1986) (citations omitted). "The trial judge is in a better position to evaluate the best interest of a child ... and his decision will not be disturbed on review absent a clear showing of abuse." State in the Interest of Sylvester, 525 So.2d 604, 608 (La.App. 3 Cir.1988) (citations omitted).
Fowler v. Fowler, 98-953, p. 4 (La.App. 3 Cir. 12/9/98); 722 So.2d 125, 128.
Accordingly, I dissent and would affirm the judgment of the trial court.
NOTES
[1] Virginia Jackson Hopkins, Esq., Family Violence Impacts Children Also, 11 NOV W. Va. Law. 16 (1997) ("At least half of all battering husbands also batter their children. The more severe the abuse of the mother, the worse the child is abused.")
[2] Pamela Posch, The Negative Effects of Expert Testimony On the Battered Women's Syndrome, 6 Am. U.J. Gender & L. 485 (1998) ("Legal recognition of BWS has been an important advancement for abused women.")
[3] Marcellene Elizabeth Harn, A Thirteen Amendment Defense of the Violence Against Women Act, 146 U. Pa. L.Rev. 1097 (1998) ("The VAWA civil rights remedy represents the first time Congress has declared that violence against women is gender discrimination. The House Conference Report, for example, states that `Congress has found that crimes of violence motivated by gender constitute bias crimes in violation of the victim's right to be free from discrimination on the basis of gender.'")
[4] Lois Schwaeber, Esq., Domestic Violence: The Special Challenge in Custody and Visitation Dispute Resolution, 10 NO. 8 Divorce Litig. 141 (1998) ("However, in disputes where there are allegations of domestic violence, the central issue is the safety of the mother and the children.")