YELVERTON, Judge.
This is the second time this custody dispute has been appealed. In Hicks v. Hicks, 98-1527 (La.App. 3 Cir. 5/19/99); 733 So.2d 1261, another panel of this court reversed an award of joint custody of three minor children which had designated the father the primary custodial parent during the school year and the mother the custodial parent during the summer. On that appeal, we decided the case de novo. Applying the Post-Separation Family Violence Relief Act, Louisiana Revised Statutes 9:361-369, we awarded sole custody of the children to the mother. We based our reversal and judgment on a finding that the mother proved by a preponderance of the evidence that the father had committed at least one act of violence resulting in serious injury and more than two acts of violence which were not refuted.
Before this court handed down its decision on that appeal, both parties had filed rules for contempt which had been set for May 21, 1999. Our decision was handed down on May 19, 1999, just two days before the hearing date for these rules. Reacting to our decision, the parties at the hearing entered a stipulation dismissing the rules for contempt and fixing a specific plan of visitation. Later that same day, allegations were made by the oldest minor child that she had been sexually abused by her mother and her mother’s new husband. Subsequent evidence established that the child had earlier (ie., before our decision was handed down) confided to friends that something bad had happened to her while she was in Canada. She also accused the new husband of physical and emotional abuse of the two younger children.
Three days later on May 24, 1999, because of the bizarre nature of the allegations and the fact that they arose when the children were to be returned to the mother, the trial court went into juvenile session and in its juvenile capacity placed | pthe oldest minor child with the paternal grandparents with supervision by the Louisiana Office of Community Services (OCS). At the same time, in compliance with our judgment, the trial judge returned the two youngest children to the mother. The trial court ordered that a report be referred to Family Services in Canada or the equivalent agency, since that was where the mother was then living (and lives still). OCS referred the oldest minor child and the father to counseling. The father then completed an anger management program.
In November 1999, the father filed another rule for custody. At a hearing on March 17, 2000, the OCS made an appearance, through its counsel, and recommended that custody of the oldest child be transferred to the father. The trial court asked for the views of counsel for the parents regarding that recommendation. When counsel for the mother responded that they were not opposed to the recommendation of the State “based upon the history of this case,” provided that it was understood that their acquiescence in the OCS recommendation was not to be taken as a waiver of her rights under the Family Violence Relief Act, the trial court returned custody of the oldest minor child to *717 the father.[1] The rule to change custody as to the other, younger children was continued until June 26, 2000. After hearing testimony and reviewing evidence introduced at that hearing, the trial court determined that the best interests of the minor children were to award sole custody to the father, with the mother having visitation of the youngest children. In reviewing the evidence, the trial court, pursuant to Louisiana Revised Statute 46:56, considered lathe voluminous OCS record introduced at trial after an in-camera inspection revealed its relevance to the matters at issue.
The mother now appeals the change of custody. We affirm. We recognize that relaxed evidentiary standards are used to determine custody pursuant to Louisiana Code of Evidence Article 1101, and that these standards are applicable to custody determinations under the Post Separation Family Violence Relief Act. Folse v. Folse, 98-1976 (La.6/29/99); 738 So.2d 1040.
TREATMENT PROGRAM
On this appeal the mother has listed five assignments of error. They can be grouped into two. Her first assignment concerns the treatment program that the father underwent pursuant to this court’s remand in the earlier appeal. She argues that the father has not completed a valid treatment program as defined by the Family Violence Relief Act.
According to Louisiana Revised Statute 9:364(A), once it is proven that a parent has a history of family violence, the “presumption shall be overcome only by a preponderance of the evidence that the perpetrating parent has successfully completed a treatment program as defined in R.S. 9:362.... ” A treatment program is defined in Louisiana Revised Statute 9:362(7) as “a course of evaluation and psychotherapy designed specifically for perpetrators of family violence, and conducted by licensed mental health professionals.”
When the OCS entered the case after our remand in 1999, it obtained evaluations from Dr. John C. Simoneaux and Dr. Rick Adams, both of whom are [4clinical psychologists licensed by the State of Louisiana.[2] The mother argues that Dr. Rick Adams was not qualified to conduct the statutorily required treatment program. Dr. Adams explained at the hearing that clinical psychology involves the application of psychological principles to the assessment, treatment, and prevention of emotional, behavioral, and developmental problems.
As a clinical psychologist, Dr. Adams testified that he had had training in the area of evaluation of perpetrators of family violence. Although he had worked more with perpetrators of physical abuse of children by parents rather than with spousal abuse, he stated that he had to train parents to address their problems with self control and how to handle the situations. In this case the father was referred to Dr. Adams by the OCS for anger management training.
Dr. Adams explained that his treatment of the father consisted of exposing him to *718 anger management techniques and strategies for controlling his anger. Dr. Adams met with the father for an initial evaluation and there were six subsequent sessions. During these sessions Dr. Adams went through the tactics that people use for controlling themselves and for identifying risk situations for loss of control, in addition to anger reducers and tactics for managing anger. Dr. Adams found the father to be completely cooperative during these sessions.
Although Dr. Adams admitted he did not know the specific details of the spousal abuse for which the father was receiving treatment, Dr. Adam’s psychotherapy assessment indicates that he knew that the father had been physically abusive to his ex-wife, with no indication that he had abused the children. He | ¡¡testified that six anger management training sessions were sufficient to expose the father to the basic principles of anger management.
As a licensed mental health professional, Dr. Adams met the statutory requirements of Louisiana Revised Statute 9:362(7) and he was the one who conducted the course of psychotherapy which was administered. The attack the mother has made on the course of evaluation and psychotherapy included questioning whether the course was, in the statutory language, “designed specifically for perpetrators of family violence.” She offered neither expert witness testimony nor other evidence regarding the standard for meeting the program for treatment as defined by the statute.
Dr. Adams testified he knew that the Post-Separation Family Violence Relief Act had something to do with the referral for anger management training. Dr. Si-moneaux had done a forensic evaluation to determine what the father did or did not need. Dr. Simoneaux’s report in evidence explained that his recommended counseling was due to spousal abuse of the mother, indicating that he was aware of the facts. The only remaining question is whether the recommended anger management program was adequate.
Although none have been suggested by the evidence nor the mother’s brief, we recognize that there may be a number of psychotherapy programs available for spousal abusers, and that there may be differences amongst both lay and professional opinions as to which is most effective. Our task on this appeal is not to decide which is the best program, but to determine whether, on these facts in this case, the trial court’s approval of this program as having met the statutory standard, was an abuse of discretion. We find that the father received a proper treatment program as defined |fiby Louisiana Revised Statute 9:362(7). Dr. Adams knew that he was treating the father for spousal abuse and his treatment consisted of helping him to learn anger management. We note that the father has since remarried, and his present wife testified that he has exhibited no abusive behavior towards her. There has never been any concern that he abuses the children. We find no error in the trial court’s ruling.
CUSTODY
The remaining assignments address the award of sole custody of the youngest two children to the father. The mother, who appears on appeal in proper person, does not assign error to the custody ruling as to the oldest child.
We remind the reader that on March 17, 2000, a special hearing on the custody of the oldest child was held. At that time, counsel for the mother was not opposed to the recommendation of the OCS that custody of the oldest child be transferred to the father, reserving only her right to *719 contest the father’s compliance with the Family Violence Relief Act. Not being able to complete the hearing regarding custody of the two youngest children at the March hearing, the trial was recessed, and it resumed on June 26, 2000. Because we have found that the father has complied with the treatment program under the Family Violence Relief Act as previously ordered by this court, we need to discuss the change of custody only as it concerns the two youngest children.
The trial court changed custody from that ordered by us in our decree, which was a considered decree handed down May 19, 1999. To change custody, the trial court was obliged to apply the appropriate burden of proof. The supreme court, citing Hensgens v. Hensgens, 94-1200 (La.App. 3 Cir. 3/16/95); 653 So.2d 48, writ denied, 95,1488 (La.9/22/95); 660 So.2d 478 and Bergeron v. Bergeron, 492 So.2d 1193 (La.1986), discussed the burden of proof when there has been a considered decree of custody:
[T]he paramount consideration in any determination of child custody is the best interest of the child. (La.C.C. art. 131). However, in actions to change custody decision rendered in considered decrees, an additional jurisprudential requirement is imposed. A considered decree is an award of permanent custody in which the trial court receives evidence of parental fitness to exercise care, custody, and control of children. When a trial court has made a considered decree of permanent custody, the party seeking a change bears a heavy burden of proving that the continuation of the present custody is “so deleterious to the child as to justify a modification of the custody decree,” or of proving by “clear and convincing evidence that the harm likely to be caused by the change of environment is substantially outweighed by its advantages to the child.”
Evans v. Lungrin, 97-541, 97-577, pp. 12-13 (La.2/6/98); 708 So.2d 731, 738 (case citations omitted).
Furthermore, Louisiana Revised Statute 9:364(A) imposes an additional burden of proof for a parent who has been found to have a history of perpetrating family violence in order to overcome the presumption that he cannot be awarded sole or joint custody of the children. In addition to proving that he has successfully completed a treatment program as defined by the Family Violence Relief Act, the father must also prove that he is not abusing alcohol nor using illegal drugs. He must additionally, prove that the best interests of the children require him to be the custodial parent because of the other parent’s absence, mental illness, or substance abuse, or such other circumstances which affect the best interests of the children.
In child custody cases, the decision of the trial court is to be given great weight and overturned only where there is a clear abuse of discretion. Thompson v. Thompson, 532 So.2d 101 (La.1988).
|sWe have already determined that the father successfully completed a treatment program, and there was evidence by the father establishing that he was not abusing alcohol or using illegal drugs. In reasons for judgment the trial court considered and discussed all of the factors listed in Louisiana Civil Code Article 134 in determining the best interests of the children and found that there were circumstances that required the father to have sole custody of the two youngest children. Mindful of the heavy burden the father had to prove that a change of custody was warranted, we find, as did the trial judge, that he met that burden, for the following reasons.
*720 The first circumstance is the allegation by the oldest child that her stepfather had sexual intercourse with her while her mother held her arms. Both the mother and stepfather denied that there was such an occurrence. The OCS investigated the allegations. The investigation included interviewing the parties involved, interviewing the oldest child’s friends and boyfriends, a doctor’s examination, and a psychiatric evaluation. There were also letters the oldest child wrote to her friends in March and early May 1999 indicating that something happened to her in Canada causing her fear of returning to Canada. These letters were written well before our May 1999 ruling awarding sole custody of this child to the mother. This child testified at the hearing involving her brother and sisters. Although the oldest child’s complaint is hard to believe, the OCS determined from its lengthy and thorough investigation that the complaint was valid.
There was also evidence that the youngest children were abused by the stepfather and mother. For example, there was testimony that while the youngest child was toilet training, the stepfather would place the child’s face in her own feces when she either had an accident on the floor or would take her feces out of her diaper |9and wipe it on the wall. There was testimony that the stepfather kicked the middle child in the back of the legs which caused bruising. The stepfather’s version of the incident differed, but the middle child said that his stepfather had kicked him when he was trying to tie his shoes. He told his mother, but she did not do anything about it. He did not want to go back to Canada with his mother.
The record also establishes a refusal on the mother’s part to facilitate a relationship between the children and the father. She purposefully disobeyed orders of the trial court in refusing to return the custody of the children to the father on two separate occasions. The mother even failed to notify the father that she was bringing the youngest children on a trip to Disneyworld in Florida where perhaps the father and oldest child could have visited with the two youngest children. The father testified that he had a hard time getting in touch with the children during the designated telephone-visitation hours because the phone line was always busy. The OCS staff records corroborated this indicating that they too had a hard time reaching the mother because the line was always busy. There was evidence that the mother was a frequent user of the Internet, which is how she met her current husband while she was still married to the father of these children, and apparently the inability to make contact by telephone was caused by the Internet connection.
There was also testimony that both the mother and father have extended family, including grandparents, living near the father’s residence in Louisiana. The oldest child testified that two grandparents, an aunt, two uncles, and seven cousins lived right down the road from her father’s house, and other close family members of both her father and her mother live a five, ten, and fifteen minute drive away. She sees her grandparents nearly every day. There is no extended family living in Canada. Since | intheir move to Canada, the two youngest children have had little or no contact with the other family members.
The father remarried on July 4, 1999. His new wife has two sons of her own who live with them. Both the father and stepmother testified that there is adequate room in their expanded, four-bedroom home for all the children. The oldest child testified that she gets along well with her stepmother even though they have disagreements every now and then. She also *721 gets along well with her two stepbrothers. The paternal grandmother who previously had custody of the oldest child testified that she would help with the two youngest children if they came back to Louisiana.
We realize that “with the new decision-making rules and the ability of parents to communicate instantly when necessary by telephone or other means, the distance separating the parents assumes less importance in determining whether sole legal custody is a better custody arrangement than joint legal custody.” Evans, 708 So.2d at 739. However, in this case the mother has consistently shown an unwillingness to foster a relationship between the children and father. Furthermore, she has twice intentionally disobeyed orders of the trial court to return the children to the father. Also, the allegations made by the oldest and middle child against the mother and stepfather are very serious and have been validated by an OCS investigation. We find that the father has clearly proven a material change in circumstances and that continuation of the present custody arrangement would be so damaging to the children as to justify a modification of the custody decree. The trial court did not err in awarding sole custody of the two minor children to the father.
InFor the above reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the mother.
AFFIRMED.
WOODARD, J., dissents and assigns written reasons.

. The father completed the anger management training on October 28, 1999. On December 30, 1999, the OCS, which had become very active in the case, had filed its own petition for transfer of unsupervised custody to the father, and simultaneously sought verbal permission from the juvenile court for permission to transfer custody on a trial basis. This was done the next day, December 31.

. Although the trial court in its reasons for judgment referred to Dr. Adams as a ''psychiatrist”, it is apparent that this was a typographical error.