STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

04-1566

G. S.

VERSUS

T. S.

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 81033-M
HONORABLE KRISTIAN EARLES, DISTRICT JUDGE
\*\*\*\*\*\*\*\*\*\*

**GLENN B. GREMILLION**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Glenn B. Gremillion, and J. David Painter, Judges.

**AFFIRMED.**

**Ted L. Luquette**
**400 S. State Street**
**Abbeville, LA 70510**
**(337) 893-8104**
**Counsel for Plaintiff/Appellant**
      **G. S. (mother)**

**G. Paul Marx**
**P. O. Box 82389**
**Lafayette, LA 70598-2389**
**(337) 237-2537**
**Counsel for Defendant/Appellee**
      **T. S. (father)**

GREMILLION, Judge.

The plaintiff, G.S., appeals the judgment granting the defendant, T.S., domiciliary custody of their three biological minor children, use and occupancy of the family home, and child support. For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 27, 2004, G.S. filed a Petition for Protection From Abuse alleging that T.S. had molested her fourteen-year-old daughter, C.S. Thereafter, a temporary restraining order was issued to prevent T.S. from coming into contact with C.S. and his three biological minor children.[1] On February 4, 2004, G.S. filed for divorce. On February 10, 2004, after a hearing on the rule for protective orders, T.S. was ordered to have no contact with C.S., G.S. was given use and occupancy of the family home, and T.S. was given reasonable visitation with his three biological children. On August 16, 2004, T.S. filed a rule to show cause why divorce should not be granted. On August 31, 2004, the trial court granted the judgment of divorce.

Following a hearing on the issues of custody, child support, and spousal support, the trial court rendered judgment on September 21, 2004, awarding G.S. sole custody of C.S., awarding G.S. and T.S. joint custody of their three biological children with T.S. designated domiciliary parent giving him temporary use and occupancy of the family home and ordering G.S. to pay T.S. $130.00 per month in child support. In its reasons for judgment, the trial court indicated its decision was made after careful consideration of the factors in La.Civ.Code art. 134 and the best interests standard. Thereafter, the trial court granted T.S.'s motion and order for the

---

[1] T.J.S., age nine; K.S., age five; and T.S., age two.

1

immediate surrender of the three younger children and family home. G.S. retained new counsel and filed a motion for new trial, which was denied. G.S. then filed a motion to vacate the order for immediate surrender of the children and home, which was also denied. G.S. now appeals and assigns as error the trial court's failure to apply the mandatory provisions of the Post-Separation Family Violence Relief Act, the award of joint legal custody of the children, the award of domiciliary custody and of the use and occupancy of the family home to T.S., and ordering her to pay T.S. child support. She further assigns as error the trial court's denial of the motion for new trial, and the trial court's failure to make a record of the in-chamber interview of then nine-year old, T.J.S.

## STANDARD OF REVIEW

The law is well settled that the trial court's finding with regard to custody matters is entitled to great weight on appeal as it is in a superior position to assess what the children's best interests are based on its consideration of the testimony of the parties and witnesses. *AEB v. JBE*, 99-2668 (La. 11/30/99), 752 So.2d 756; *Miller v. Miller,* 01-356 (La.App. 3 Cir. 10/31/01), 799 So.2d 753. Therefore, upon review the findings of the trial court in custody matters are afforded great weight and the trial court's determination will not be disturbed absent a showing of abuse of discretion. *Thibodeaux v. Thibodeaux*, 00-82 (La.App. 3 Cir. 6/1/00), 768 So.2d 85, *writ denied*, 00-2001 (La. 7/26/00), 766 So.2d 1262.

## CUSTODY AND THE APPLICATION OF LA.R.S. 9:361ET SEQ.

In all child custody cases, the primary consideration is the best interests of the children. *See* La.Civ.Code art. 131. Numerous factors are at the trial court's

2

disposal in making this determination and are set forth in La.Civ.Code art. 134. G.S.'s first five assignments of error all hinge on application of the Post-Separation Family Violence Relief Act (PSFVRA). G.S. argues that the trial court's findings with respect to assignments of error one through five are all flawed because it failed to apply the PSFVRA. G.S. alleges that T.S. sexually abused her older daughter, C.S., whom T.S. adopted during the marriage. However, the trial court apparently did not find these claims were substantiated and, in fact, denied the motion for new trial in which G.S. urged that the trial court erred by failing to apply La.R.S. 9:361, et seq. We find no error in that ruling and in its implied finding that G.S. failed to prove by clear and convincing evidence that the provisions of the PSFVRA should apply.

La. R.S. 9:364(A) states:

> There is created a presumption that no parent who has a history of perpetrating family violence shall be awarded sole or joint custody of children. The court may find a history of perpetrating family violence if the court finds that one incident of family violence has resulted in serious bodily injury or the court finds more than one incident of family violence. The presumption shall be overcome only by a preponderance of the evidence that the perpetrating parent has successfully completed a treatment program as defined in R.S. 9:362, is not abusing alcohol and the illegal use of drugs scheduled in R.S. 40:964, and that the best interest of the child or children requires that parent's participation as a custodial parent because of the other parent's absence, mental illness, or substance abuse, or such other circumstances which affect the best interest of the child or children.

La.R.S. 9:364(D) states:

> If any court finds, by clear and convincing evidence, that a parent has sexually abused his or her child or children, the court shall prohibit all visitation and contact between the abusive parent and the children, until such time, following a contradictory hearing, that the court finds, by a preponderance of the evidence, that the abusive parent has successfully completed a treatment program designed for such sexual abusers, and that supervised visitation is in the child's best interests.

3

La. R.S. 9:362(3) defines "family violence":

"Family violence" includes but is not limited to physical or sexual abuse and any offense against the person a defined in the Criminal Code of Louisiana, except negligent injuring and defamation, committed by one parent against the other parent or against any of the children.

Whether a spouse/parent has committed acts of "family violence" as defined in the statute is a question of fact. *See Ledet v. Ledet*, 03-537 (La.App. 5 Cir. 10/8/03), 865 So.2d 762.

G.S. testified that since February 2004, T.S., who works a seven days off, seven days on schedule, has T.J.S., her oldest son the entire time he is at home. She testified that she did not have any objection to T.S. visiting their three younger children and that OCS had not prohibited T.S. from seeing the other children despite the claims made by C.S. G.S. testified that she had been employed as an LPN prior to a period when she was in an inpatient program for alcohol abuse. However, she admitted that she still drinks "socially" once or twice a week at home. She denied going out to clubs except when she and T.S. first separated.

G.S. stated she had worked as an LPN for twelve years and was making around $24,000 a year, but that her LPN license expired about six years prior to trial and that she had not renewed it or made any inquiries about renewing it since the separation in February 2004. G.S. also admitted that she forged a prescription, but denied having done it again. She also admitted forging a check on T.S.'s checking account in February 2004. G.S. further testified that she had not worked at all since the separation and that T.S. has been paying all of the bills. She further stated that she had no plan regarding obtaining a job and had not taken any steps to establish any kind of financial independence for herself and her children.

G.S. testified that her friend, Pete Klump, and his two children, have slept over at her house twice. She also testified to an incident where her five-year-old set her bed on fire while trying to light a candle. G.S. stated she was mopping the kitchen floor when this occurred. She testified she was reimbursed $950 by her insurance company for the damage.

G.S. testified that T.S. molested C.S. and that OCS "validated" the complaint. She testified that the proceedings were ongoing in Vermilion Parish. However, she again stated that she allows the other three children to visit T.S. whenever they want to because she does not see a problem there. In her deposition, G.S. testified that she first found out about the alleged molestation on January 26, 2004, and that shortly prior to that C.S. had gotten in trouble for taking the car without permission. G.S. testified that C.S. told her that T.S. offered C.S. "four whippings or two whippings and let him touch her." G.S. also stated that this was the third time she and T.S. had split up; the second time because she had committed adultery. G.S. further stated that it is important to her that T.S. have a relationship with the kids. G.S. testified that she has been the primary caregiver for the children throughout their lives. She testified that she has not made any plans to take care of herself in any way and does not know where she will live if T.S. is granted use of the home. G.S. further testified that she had done nothing in the past seven months prior to trial to get ready to be a parent to her children.

T.S. testified that C.S.'s allegations arose after he disciplined her for talking to an older boy and taking the family car out without permission. T.S. testified that he punished C.S. and whipped her. He stated that the allegations of

5

molestation are untrue. T.S. stated that G.S. leaves the younger children with C.S. and others so that she can go out. He further testified that she has been drinking again and is often incoherent.

T.S. testified that while he is offshore, his mother will watch his three children. He stated that if he got custody of the children she would quit her full-time job and he would pay her. He also testified that he occasionally sleeps at his girlfriend, Phyllis Duhon's, house and that if the children are with him they sleep there too.[2]

C.S., who was fifteen at the time of trial, testified that T.S. molested her, stating he put "his hands in my pants and stuff." She stated that she had written a letter telling her mother that she was running away from home because of what T.S. had done to her and that her school principal had found the letter. C.S. stated that she has watched the younger children once or twice for no more than an hour while her mother ran an errand. C.S. testified that her mother drinks one or two beers a day and that Pete Klump does also.

Tara Klump, who is Pete's daughter and was eighteen at the time of trial, testified that she goes to G.S.'s house on a daily basis and that she mainly babysits the children on the weekends.

Having reviewed the evidence, we do not find that the trial court abused its discretion in not applying the provisions of the PSFVRA and in naming T.S. the primary domiciliary parent. Clearly, G.S. expressed no concern over T.S.'s presence around their three minor children. Other than the vague claim by C.S., there was no

---

[2] Note that Phyllis Duhon is Tara Klump's mother and Pete Klump's ex-wife.

6

substantive evidence to support her claim of molestation. The testimony also supports the trial court's ruling that T.S. be named domiciliary parent. G.S. appears to have no desire to provide for her children or better her circumstances. Further, her past indicates a serious problem with alcohol and drug abuse which appears to continue to the present. Accordingly, G.S.'s first five assignments of error are without merit.

## MOTION FOR NEW TRIAL

The Louisiana Code of Civil Procedure provides three instances under which a motion for new trial will be granted. Louisiana Code of Civil Procedure Article 1972 provides the grounds under which such a motion will be granted:

> 1. When the verdict or judgment appears clearly contrary to the law and the evidence.
>
> 2. When the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial.
>
> 3. When the jury was bribed or has behaved improperly so that impartial justice has not been done.

Louisiana Code of Civil Procedure Article 1973 further provides that a motion for new trial may also be granted "if there is good ground therefore, except as otherwise provided by law." In both instances, the trial court is accorded vast discretion in deciding whether to grant the motion; its decision whether to do so is reviewed pursuant to the abuse of discretion standard of review. *Davis v. Coregis Ins. Co.*, 00-475 (La.App. 3 Cir. 12/27/00), 789 So.2d 7, *writ denied*, 01-0292 (La. 3/30/01), 788 So.2d 1192.

7

G.S. based her motion for new trial on the failure of the trial court to apply the provisions PSFVRA. In her motion, she stated that it did not appear that the trial court was made aware of the fact that C.S. was adjudicated a child in need of care regarding the molestation allegations prior to the trial. This evidence could have been presented at trial. Furthermore, the trial court heard C.S.'s testimony alleging that T.S. molested her, and obviously did not find it credible. Moreover, G.S. has full custody of C.S.. As we have found no error in the trial court's former findings, we affirm the trial court's denial of the motion for new trial.

## IN-CHAMBERS INTERVIEW

Finally, G.S. argues that the non-recorded in-chambers interview of her son, T.J.S., was reversible error. At the conclusion of the September 17, 2004 hearing, T.S.'s attorney asked the trial court to interview T.J.S. in chambers, in private, and off the record. G.S.'s attorney objected to his age and the possibility of the trial court asking him to choose between his parents. The trial court responded, "Well, I'm not going to ask him to choose, but I'll talk to him for a few minutes in private." No request was made by either party to make a record of the trial court's interview of the child nor was an objection made of the procedure the trial court used in conducting the interview.

We recently addressed the issue of interviewing a child in chambers without a record being made in *Weaver v. Weaver*, 01-1656 (La.App. 3 Cir. 5/29/02), 824 So.2d 438. In *Weaver*, the plaintiff urged that the trial court erred in failing to make a record of its in-camera interview of her daughter, citing *Watermeier v.*

8

*Watermeier*, 462 So.2d 1272 (La.App. 5 Cir.), *writ denied*, 464 So.2d 301 (La.1985).

We stated:

> In *Watermeier*, the fifth circuit held that a trial court's in-chambers questioning of a child witness must be recorded by the court reporter. We cited this principal with approval in *Dykes v. Dykes*, 488 So.2d 368 (La.App. 3 Cir.), *writ denied*, 489 So.2d 1278 (La.1986), and *Hicks v. Hicks*, 98-1527 (La.App. 3 Cir. 5/19/99), 733 So.2d 1261.
>
> We note that, in *Watermeier*, 462 So.2d at 1275, the court went on to state:
>
> > We do not intend or direct that the above procedure is ordained or mandatory when there is no objection from either side regarding the examination of any child by the judge. In such case, the trial judge may examine any child or witness in chambers, on or off the record, and with or without parents and/or counsel being present–provided all agree on the procedure.
>
> In *Dykes*, 488 So.2d at 371, counsel for both parties waived their presence in chambers and any objections. We stated:
>
> > Even though the presence of counsel was waived in this instance, with no record having been made of the proceeding we are without means of review of the competency of the witnesses or the reliability of any stated preferences as to custody. We agree with our brothers of the Fifth Circuit that such an interview must be conducted with a reporter present and a record made of the questioning by the court and the answers of the witnesses.
>
> However, we went on to find that the child, who was five years old, was not capable of making a judgment regarding his best interests and welfare, and we reversed the trial court's ruling changing custody of the five-year-old boy from his mother to his father based on the record before us.
>
> In *Hicks*, we again cited *Watermeier* with approval. In *Hicks*, the trial court heard testimony in chambers from the teenage daughter of the parties, with both parties' attorneys present, but did not record the testimony. Based on the failure of the trial court to apply the provisions of La.R.S. 9:361 (Post-Separation Family Violence Relief Act), we found that it committed reversible error and we conducted a de novo review of the record and rendered judgment on the merits, reversing the

9

custody award of the trial court. Then, concerning the failure to record the in chambers testimony of the child, we stated:

> Because of our decision regarding the first assignment of error, it is unnecessary for us to render a decision concerning the second assignment of error. However, we note that the law in this circuit requires that an "in chambers" interview of a child in a child custody case "*must* be conducted with a reporter present and a record made of the questioning by the court and the answers of the witnesses." It is not harmless error, as such action by a trial court makes impossible our ability to thoroughly and properly review the record of the trial between the parties.

*Hicks*, 733 So.2d at 1267 (citations omitted). However, based upon a de novo review of the record that was before us, we were able to render a judgment without the transcript of the child's testimony. Additionally, two judges dissented from the majority opinion and would have affirmed the trial court's decision based on no finding of an abuse of discretion.

*Id.* at 441-42.

We then went on to hold in *Weaver* that, although it was error for the trial court to fail to record the daughter's testimony, the record reflected that the trial court's findings were not based on that testimony and that its ruling would have been the same without the brief in-chambers interview of the daughter. Finally, after reviewing the record, we felt that reversal on this technical issue would not be in the best interest of the child.

Similarly, in *Brown v. Brown*, 39,060 (La.App. 2 Cir. 7/21/04), 877 So.2d 1228, which cites *Weaver* with approval, the trial court conducted an in-camera interview of three children, which was neither recorded nor attended by the attorneys. However, the trial court openly stated in court that the children's preference was to reside with the mother. The appellate court found that remand was not required

because the mother was not prejudiced by the court's failure to follow the *Watermeier* procedure since the trial court awarded primary custody to the father based on other factors which were supported by the record.

In this instance, the trial court specifically stated that it was not going to ask T.J.S. to choose between parents for the "few minutes" it spoke to him in chambers. Nevertheless, in accordance with our previous rulings, we do find it was error not to record the interview. However, we find that the trial court did not rely upon this exchange in making its determinations. Moreover, we find sufficient evidence in the record that naming T.S. the domiciliary parent was in the children's best interests regardless of what T.J.S. told the trial court in their interview.

## CONCLUSION

The judgment of the trial court naming the defendant-appellee, T.S., domiciliary parent of the three minor children born of the marriage, awarding him use and occupancy of the family home, and ordering G.S. to pay him child support, is affirmed. All costs of this appeal are assessed against the plaintiff-appellant, G.S.

**AFFIRMED.**

11