# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-CT-01836-SCT

*THOMAS LEE ROBISON*

*v.*

*CAROL DENISE ROBISON LANFORD*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 7/28/1999 |
| TRIAL JUDGE: | HON. JANE R. WEATHERSBY |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | JEFFERSON DAVIS GILDER |
| ATTORNEY FOR APPELLEE: | KINNEY M. SWAIN |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | COURT OF APPEALS' JUDGMENT AFFIRMED, AND CHANCERY COURT'S JUDGMENT REVERSED AND REMANDED - 04/03/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COBB, JUSTICE, FOR THE COURT:**

¶1.     At issue in this appeal is whether a record of in-chambers discussions with children must be made by the trial judge. We grant certiorari because this is an issue of first impression and one of broad public importance, as children are often interviewed by judges

off-the-record, and frequently these in-chambers discussions weigh heavily in the trial court's decision. We affirm the Court of Appeals' reversal of the chancellor's decision and remand with instructions regarding the conduct of additional proceedings.

**FACTS**

¶2.    Carol and Thomas Robison divorced in 1993 and agreed to joint legal custody of their daughter, Brittany, who was to live with Thomas nine months of the year and with Carol the remaining three months. In 1997 Thomas filed a motion to modify custody in order to obtain sole custody of Brittany. Carol answered and filed a cross-motion seeking sole custody. The dispute was settled by a consent modification decree in December 1998, which left custody unchanged but clarified visitation.

¶3.    Soon thereafter, Carol filed a new petition to modify custody, citing the finding of two small bruises on Brittany's buttocks.[1] The bruises were the result of a spanking given by Thomas. The matter was referred to Department of Human Services (DHS) for an investigation into possible child abuse. DHS conducted a detailed study of the living environments of both Carol and Thomas and concluded that both parents would provide a stable environment for the child.

---

[1] Dr. Micheal Wheelis examined Brittany, on March 27, 1999, in the Emergency Department of North Mississippi Medical Center, in Tupelo, Mississippi. In deposition testimony, he stated that Brittany was brought in at 1:00 a.m. by her mother to be examined. Dr. Wheelis found 2 bruises on Brittany's buttocks, measuring approximately 6 centimeters in diameter. He also testified that the bruises were most likely made by a hand or paddle. Dr. Wheelis stated "[i]t looked like it was a pretty good spanking." He continued that since the spanking took place a few days earlier and left bruises it warranted someone looking into the situation. Dr. Wheelis found no other signs of abuse or neglect on Brittany.

¶4. A hearing was conducted by the chancellor in July 1999. She reviewed the DHS home studies' results and heard testimony from all parties, including an in-chambers, off-the-record interview with Brittany. The chancellor found it would be in the best interest of the child for Carol to have physical custody. Thomas appealed.

¶5. The Court of Appeals remanded for additional development of the record, asking that the chancellor:

> make such findings of fact as she finds appropriate to explain the evidence that she found to justify a change in custody. If weight was given to what Brittany stated in chambers, then that became evidence that the parties and this appellate court cannot review since it is not in the record. A new and transcribed interview with Brittany would be necessary, held under such restrictions as are acceptable to the chancellor and the parties that still would allow us to review a record of what Brittany says.

*Robison v. Lanford*, No. 1999-CA-01836-COA at ¶ 24 (Miss. Ct. App. June 26, 2001) ("*Robison I*"). The chancellor did not conduct any further hearing or interview, and in her Findings on Remand stated that she "weigh[ed] the testimony and evidence presented and the Court's conversation in chambers with the minor child" and "found without a doubt that the child's custody should be awarded to the mother." She went on to add that "[a]ll this Court will disclose regarding the off-the-record conversation with [Brittany] is that it was relevant." She refused to provide any information gathered in the conversation or to take any additional steps to provide any evidence of that conversation or to hold a new transcribed interview as suggested by the Court of Appeals.

¶6. The chancellor also erroneously stated that Thomas had objected to another interview with Brittany. Based on that statement, the Court of Appeals found the issue had been

3

waived by Thomas, the party alleging error, and affirmed the chancellor's decision. ***Robison v. Lanford***, No. 1999-CA-01836-COA (Miss. Ct. App. Dec. 4, 2001) ("***Robison II***").

¶7.    Thomas filed a motion for rehearing and submitted a letter from his attorney to the chancellor, written after the COA opinion but before her findings on remand, which clearly stated that Thomas ***did not*** object to another in-camera interview with Brittany, but rather that he objected only if the interview was to be ***off*** the record.  The Court of Appeals granted Thomas's motion for rehearing, withdrew its former opinion and, on March 19, 2002, entered its opinion reversing the judgment of the chancellor and remanding the matter for additional proceedings regarding custody. ***Robison v. Lanford***, 822 So. 2d 1034 (Miss. Ct. App. 2002) ("***Robison III***").   The Court of Appeals stated that "[t]aking an unduly independent approach to protecting [Brittany's] best interest, the chancellor has not allowed a record to be made of the basis of [her] decision.  We do not want this tug and pull between the two courts to distract either court from the issues of the child's welfare.  Therefore, taking into account the long passage of time since the initial modification decision, and factoring in our reluctance to make a final decision here on appeal that would be so centrally affected by this institutional disagreement, we remand for further proceedings," at ¶ 24, at which "[a] record of all evidence acquired must be made." ***Id.*** at ¶ 33.

¶8.    From that decision, Carol filed a petition for certiorari and we granted her petition, although we agree with the reasoning of the Court of Appeals, in order to include proper procedures for conducting the in-chambers conference.

## STANDARD OF REVIEW

¶9.     The standard of review in child custody cases is narrow.  Reversal of a chancellor's judgment requires that the chancellor be manifestly wrong or have "applied an erroneous legal standard." *Lee v. Lee,* 789 So. 2d 1284, 1288 (Miss. 2001)(citing *Williams v. Williams,* 656 So.2d 325, 330 (Miss. 1995)).  An appellate court is to affirm findings of fact by chancellors in domestic cases when they are "supported by substantial evidence unless the chancellor abused [her] discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied." *Holloman v. Holloman*, 691 So. 2d 897, 898 (Miss. 1996).  It is the role of the chancellor to ascertain whether witnesses and evidence are credible and the weight to give each.  *Chamblee v. Chamblee,* 637 So.2d 850, 860 (Miss. 1994).  Let us remember, it is the responsibility of this Court, like the chancellor, to make the best interest of the child our "polestar" consideration.  *Hensarling v. Hensarling,* 824 So.2d 583, 587 (Miss. 2002).

## DISCUSSION

**I. WHETHER, BY CONSENTING TO THE IN-CHAMBERS INTERVIEW BY THE COURT, THE PARTIES WAIVED ANY OBJECTIONS TO THE COURT'S RULINGS OR FINDINGS OF FACT BASED UPON THE IN-CHAMBERS INTERVIEW WITH THE CHILD.**

### A.  Whether waiver prevents appellate review.

¶10.    The agreement of counsel and chancellor to the in-chambers interview with Brittany does not waive the issue for appellate review.   It is essential that appellate courts have a complete and accurate record when reviewing child custody judgments.

¶11. In *Dykes v. Dykes,* 488 So. 2d 368, 371 (La. Ct. App. 1986), a Louisiana appellate court stated that "even though the presence of counsel was waived. . . with no record having been made of the proceeding we are without means [to] review. . . the reliability of any stated preferences as to custody [by the children]." In *Dykes* the counsel invited the trial court to interview in-chamber the children and waived any objection to said interview. The court acknowledged that such in-chambers interviews are important in "custody proceedings to relieve the child of the possibly intimidating presence of the mother and father"; however, the court went on to say "such an interview must be conducted with a reporter present and a record made of the questioning by the court and the answers of the [children]." *Id.*

¶12. In an Arkansas case, the transcript of two minor children's testimony, in keeping with an agreement by the parties and representations made by the trial judge to these children at the time they were interviewed in chambers, was sealed. The appellate court ordered unsealing of the record, finding that Ark. Code Ann. § 16-64-129(a)(2) and Administrative Order Number 4 :

> appear to countenance a waiver of the record by the parties. However, for the following reason this would not appear to be a satisfactory solution to the problem of allowing children to testify with confidentiality. If the parties agree to waive a record and permit the child or children to be interviewed privately by the trial judge, and the aggrieved parent desires to appeal, the absence of a record virtually renders the judge's decision irreversible.

*McNair v. Johnson*, 57 S.W.3d 742, 744 (Ark. Ct. App. 2001).

¶13. Here, there is no dispute that Thomas, Carol and respective counsel agreed to the off-the-record interview of Brittany. Ordinarily a waiver between two parties would preclude that issue from appellate review, but when the waiver concerns the best interest of a child,

6

we will not allow it to prevent appellate review, especially where no guardian ad litem was appointed to protect the child's best interest. The concern of this Court is that, although the chancellor admittedly relied on the in-chambers interview to make her decision[2] she made no findings on the record concerning that interview, even after the Court of Appeals instructed her to do so. She stated: "[a]ll this Court will disclose regarding the off-the-record conversation with [Brittany] is that it was relevant." While the stipulation would ordinarily waive any objection to the lack of a record, we find that the need for a record to enable meaningful appellate review outweighs any need to find waiver here.

¶14. The chancellor first notes in her Findings on Remand, that Thomas's remarriage was a substantial change in circumstances. This Court has long held that remarriage itself does not constitute a material change in circumstances that would justify a change of custody. *Allen v. Allen,* 243 Miss. 23, 33, 136 So.2d 627, 632 (1962). At the time of the hearing, Thomas had been remarried almost five years. Thomas's wife testified that she is very close to Brittany and is her cheerleading coach. At the time of the December 1998 Consent Modification Decree Thomas was remarried. Custody should not be changed unless there has been a material change which "adversely affects the child's welfare occurring since the original decree." *Kavanaugh v. Carraway*, 435 So.2d 697, 699 (Miss. 1983).

¶15. The chancellor also noted that Thomas's "drinking, temper and inappropriate discipline were red flags to the Court that the child's custody should be changed." Carol,

---

[2] The chancellor stated "[in weighing the testimony and evidence presented and the Court's conversation in chambers with the minor child, this court found without a doubt that the child's custody should be awarded to the mother."

Sonia (one of Carol's friends), and Carol's mother provided testimony to support Carol's motion for modification; each testifying that Thomas was a heavy drinker or had a drinking problem. However, none of them had ever seen him drink excessively and none had actually seen him drink in years. The chancellor must weigh the credibility of witnesses and take into account any bias motives a witness may have. *Chamblee*, 637 So. 2d at 860. Taking the testimony as the chancellor did, as believable, it only shows that at some time Thomas drank excessively but does not indicate any danger to himself or the children. As for the "inappropriate discipline" that was a reference to the bruises that Carol discovered on Brittany. Carol and her witnesses testified that the bruising was more extensive than just on her buttocks. This testimony contradicted that of the examining physician Dr. Wheelis. There was no other evidence presented that indicated previous abuse by Thomas. "[A]n isolated incident, e.g., an unwarranted striking of a child, does not in and of itself justify a change in custody." *Tucker v. Tucker*, 453 So. 2d 1294, 1297 (Miss. 1984). Even taking all these things together, there is little to indicate a material change in circumstances that adversely affected Brittany's welfare.

¶16. In addition, the chancellor failed to use the correct standard of review for a child custody modification. The chancellor stated, "[s]ince the original custody agreement between the parties, Mr. Robison has remarried and has also undertaken the responsibility of raising two step-children. Therefore there is a substantial change in circumstances *if in fact this is the right legal standard to be applied in a child custody situation.*" (emphasis added). In proceedings to modify custody, "the prerequisites [are] (1) proving a material change in circumstances which adversely affects the welfare of the child and (2) finding that

8

the best interest of the child requires the change of custody." ***Brocato v. Brocato,*** 731 So. 2d 1138, 1141 (Miss. 1999) (citing ***Smith v. Jones,*** 654 So. 2d 480, 486 (Miss. 1995)). The burden of proof is on the movant. ***Id.*** The Court of Appeals was correct when it stated "[t]he evidence in the record is sparse to support that there was a material change in circumstances adverse to the interest of the child, or that the mother's receiving custody was in the child's best interest." ***Robison III***, 822 So. 2d at 1037.

¶17. We cannot properly review a chancellor's judgment without full knowledge of all the evidence the chancellor considered when making the judgment. The in-chambers interview, and the chancellor's continuing refusal to reveal any of the content of that interview, prevents this Court from having a full review of the evidence the chancellor used in making her decision. However, from the record as it exists before us, it appears that there was no material change adversely affecting Brittany. A "substantial change in circumstances" is not enough for a modification of custody lacking some adverse result for the child, and the record shows nothing warranting a change in custody.

**B. Whether the in-chambers interview should be made part of the record**.

¶18. The lack of supporting evidence in the record leads to the real issue, whether courts must make a record of in-chambers conversations with children. Because this Court has not previously addressed the necessity for making a record of in-chambers conversations with minor children, we look to our sister states for guidance. The best analysis is found in ***Watermeier v. Watermeier***, 462 So. 2d 1272, 1274 (La. Ct. App. 1985), in which the Louisiana Court of Appeals, Fifth Circuit, addressing the question of whether a record should be made of a judge's in-chambers interview, opined as follows:

We have given this matter grave consideration and, whereas we are impressed by the very plausible argument of counsel for respondent that an interview by the judge alone (without a record being made and without the ominous presence of parents and counsel), would relieve the child of fear and tension so that he would be more inclined to talk freely and truthfully, we cannot agree. To do so would do violence to the basic concerns of our adversary system because the attorneys and parties, as well as the appellate court, would be forced to trust completely and without reservation the discretion of the trial judge as to the propriety of his questions, his assessment of the veracity of the answers, and his entire judgment without ever knowing what was told to him. Such answers could well be the basis of his ruling. In addition, there would be no way for a party to ever contest, disapprove, or argue on appeal about any statement or accusation, no matter how wild or false, that the child may have made (perhaps in his fancy)–unless he knows what the child said to the judge.

*See also* **Weaver v. Weaver**, 824 So. 2d 438 (La. Ct. App. 2002); **Hicks v. Hicks**, 733 So. 2d 1261 (La. Ct. App. 1999); **Dykes v. Dykes**, 488 So. 2d 368 (La. Ct. App. 1986). The absence of a record of the conversation "makes impossible our ability to thoroughly and properly review the record of the trial between the parties." **Hicks**, 733 So. 2d at 1267.

¶19. In Georgia, not only has this problem been addressed in the Uniform Superior Court Rules, but the Court of Appeals of Georgia has also commented on and affirmed the importance of making a finding on the record regarding such in-chambers conversations. *See* Uniform Superior Court Rules 24.1 et seq., 24.5(B); **Williams v. Stepler**, 471 S.E.2d 284 (Ga. Ct. App. 1996). A trial court's refusal to make a record of a "private conversation" between the court and the child "left the father with no means of knowing the basis for any findings the court might make." **Williams**, 471 S.E.2d at 286 (Beasley, C.J., specially concurring). The court held "the trial court erred in issuing an order containing findings based in part on an interview with a child which was not recorded . . . [such] proceedings

were fatally flawed . . . ." *Id.* Of great importance to the court was the purpose of the recordation, which was to "preserve the court's interview with the child, and the child's statements to the court." *Id.* Likewise, the Illinois Marriage and Dissolution of Marriage Act sets out guidelines for in-chambers interviews of children in custody proceedings. 750 Ill. Comp. Stat. 5/640(a) (West 1996). "The court shall cause a court reporter to be present who shall make a complete record of the interview instantaneously to be part of the record in the case." *Id.* In an Illinois case, one party was prevented from being present during the in-chambers interview because said party was a pro se litigant.[3] However, because the interview was recorded by the court reporter and made a part of the record, the court was able to properly determine that there was no prejudice to the party. *In re Marriage of Knoche* 750 N.E. 2d 297, 302-03 (Ill. App. Ct. 2001).

¶20. We agree with our sister states that a record of in-chambers interviews with children must be made and become a part of the record. We set forth the following procedure to be employed by courts dealing with in-chambers interviews of children. A record must be made by a court reporter physically present during the in-chambers interview. We are mindful that a child may be uncomfortable in an in-chambers interview with even one adult, and that discomfort might be exacerbated by the presence of a second adult with the attendant equipment of a court reporter. However, we are confident that the chancellors in our state will be able provide an atmosphere in which the child is able to converse freely with the chancellor, without attention being drawn to the reporter. It will be at the court's discretion

---

[3]The Illinois rule also provides that counsel for the parties shall be present. We, however, do not adopt that provision as a part of our procedures adopted herein.

11

whether to seal the interview, which may by order of the trial court or an appellate court be unsealed for review.

## II.  WHETHER A GUARDIAN AD LITEM WAS REQUIRED.

¶21.    Because the child's best interest is our "polestar" consideration, the importance of guardian ad litem appointments in child custody proceedings cannot be overemphasized.  In any proceeding regarding a change of custody or visitation we must be mindful of the child's best interest.  Miss. Code Ann. § 9-5-89 (Rev. 2002) provides in pertinent part:

> The court may appoint a guardian ad litem to any infant or defendant of unsound mind, and allow him suitable compensation payable out of the estate of such party, but the appointment shall not be made except when the court shall consider it necessary for the protection of the interest of such defendant; and a decree or judgment of any court shall not be void or erroneous because of the failure to have a guardian ad litem.

The appointment of a guardian ad litem allows for the child to be represented and for the child's voice to be heard by the court through an independent party.

¶22.    In child custody cases where allegations of abuse are at issue, it is mandatory that a guardian ad litem be appointed.  Miss. Code Ann. § 93-5-23 (Supp. 2002) provides in pertinent part:

> The court may investigate, hear and make a determination in a custody action when a charge of abuse and/or neglect arises in the course of a custody action as provided in Section 43-21-151, and in such cases the court shall appoint a guardian ad litem for the child as provided under Section 43-21-121, who shall be an attorney.

¶23.    Carol alleged physical abuse by Thomas in her petition for a change of custody.  The Chancellor ordered the Department of Human Services to investigate these allegations, but did not appoint a guardian ad litem for Brittany. Unless the allegation of child abuse is withdrawn, the chancellor should appoint a guardian ad litem prior to the hearing which we order today.

**CONCLUSION**

¶24. The Court of Appeals is affirmed in its reversal of the chancery court. On remand, the chancellor shall conduct additional proceedings in accord with this opinion, to determine whether custody should be modified. A record of all evidence acquired must be made. Any in-chambers conversations with Brittany or any other witnesses must be held with a court reporter present to record the in-chambers proceedings. The chancellor may, in her discretion, seal the transcribed record of the in-chambers conversations in accord with existing court procedures. The sealed record may be unsealed only upon order of the trial court or an appellate court.

¶25. **COURT OF APPEALS' JUDGMENT AFFIRMED, AND CHANCERY COURT'S JUDGMENT REVERSED AND REMANDED.**

    **PITTMAN, C.J., SMITH, P.J., WALLER, DIAZ, EASLEY, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., CONCURS IN RESULT ONLY.**