CARLTON, J.,
Dissenting:
¶ 51. I respectfully dissent and would remand this case back to the chancellor for appointment of a guardian ad litem to represent the interests of the children and to make recommendations to the chancellor as to the children’s best interests. See Miss.Code § 43-21-121 (Rev.2009). I fully acknowledge the difficulty faced by chancellors in determining custody in cases fraught with conflict between the parents. However, in determining custody, we must separate the issues of spousal fault in order to focus on parental fitness and issues relevant to the determination of the best interests of the children in the custody award. The task faced by the *151 chancellor in these cases is indeed difficult, and in addressing such difficult situations, chancellors may avail the assistance of a guardian ad litem to assist in making recommendations or to represent the children’s interests. See id. (Chancellors may appoint a guardian ad litem in situations including “when the interests of the child and the parent, considered in the context of the cause, appear to conflict”; when evidence is raised as to abuse or neglect of the children; and in any other cause where the appointment is “in the best interest of the children.”). See also Mayfield v. Mayfield, 956 So.2d 337, 345-46 (¶¶ 23-26) (Miss.Ct.App.2007) (Chancellor relied upon guardian ad litem’s report and recommendation that custody should be awarded to the father, where the mother involved the children in adulterous activities and violated court orders restricting contact between the children and the mother’s paramour.); Ethridge v. Ethridge, 926 So.2d 264, 267 (¶¶ 11-14) (Miss.Ct.App.2006) (Guardian ad litem appointed to inquire into mother’s relationship with a drug user, and the chancellor made suitable allowances for concerns raised by the guardian ad litem.); Forsythe v. Akers, 768 So.2d 943, 948 (¶¶ 12-13) (Miss.Ct.App.2000) (Custodial mother engaged in several relationships since the divorce, but the chancellor found this insufficient to establish a material change warranting modification of custody due to the lack of evidence of any adverse effects on the children and when considered in light of the guardian ad litem’s report finding that both parents’ homes were fit.).[5]
¶ 52. When we first reviewed this case on appeal, we found the chancellor’s findings in a letter opinion insufficient to determine if the chancellor had abused her discretion in her application of the Al-bright [6] factors. The case presented a particularly troublesome appellate review, as it contained only the limited factual analysis provided in the chancellor’s abbreviated letter opinion to guide us, and as the record reflected evidence of domestic violence. Our review was limited in the following areas: whether the evidence supported the findings as to the various Albright factors; whether the chancellor determined that Alex had overcome the statutory rebuttable presumption[7] against granting custody to a parent with a history of domestic violence; and also whether any consideration was given to this statutory presumption.
¶ 53. In our review of determining whether the chancellor abused her discretion in this case, we evaluate whether evi-dentiary support exists for the chancellor’s findings. Robison v. Lanford, 841 So.2d 1119, 1122 (¶ 9) (Miss.2003). The record in this case presented conflicting evidence, and the chancellor’s award of custody to Alex was not clearly supported by the evidence upon review. As a result, supplemental findings were necessary so that we could review the chancellor’s consideration of the statutory presumption applicable to domestic abuse eases as well as the chancellor’s findings of fact and weighing of Albright factors. We, therefore, remanded this case to the chancellor to provide supplemental findings of fact and conclusions of law as required by Powell v. Ayars, 792 So.2d 240, 244-15 (¶¶ 10-11) (Miss.2001) and Albright, 437 So.2d at 1005.
*152 ¶ 54. The supplemental findings fail to address evidence in the record impacting upon the parental and mental fitness of Alex. The omission of the consideration of the impact of Alex’s parental and mental fitness on the children causes concern about the welfare and safety of the children. A review of the record and Alex Brumfield’s assertions raise fear that the award of custody was based upon marital fault,[8] namely Heather Brumfield’s alleged adultery, instead of the best interests of the children, as exemplified by properly weighing the Albright factors. We must acknowledge that the Mississippi Supreme Court established that an award of custody of children cannot be based upon the adultery of a parent unless the conduct negatively affected the children. Brekeen, 880 So.2d at 284 (¶ 6); Carr v. Carr, 480 So.2d 1120-23 (Miss.1985); Weeks v. Weeks, 989 So.2d 408, 412 (¶ 16) (Miss.Ct.App.2008). The chancellor’s initial letter opinion provides that if Heather had turned to Alex for support during her recent depression, instead of away from him, she would have been more successful in dealing with her .problems. This comment appears to reflect upon marital fault instead of the issue of custody. Therefore, to ensure that the proper factors were considered by the chancellor in determining custody, I submit that we remand this case to the chancellor to appoint a guardian ad litem to assist the chancellor in ascertaining the best interests of the children amidst the cloud created by the failings of both parents as spouses. The guardian ad litem can assist in evaluating all of the issues affecting the children’s best interests and welfare.
¶ 55. ■ The record before us contains no actual evidence of any alleged adultery occurring while Alex and Heather lived together. The record does contain evidence of one adulterous relationship occurring after the parties’ separation. The record fails to show that the relationship caused any negative impact on the children,[9] and Heather denied the occurrence of the relationship. The record is nonetheless replete with Alex’s assertions that Heather had committed adultery. The record also contains evidence as to the lifestyle of Heather’s mother, Debbie Sue Harris, in support of Alex’s quest for custody. Both Heather and her mother admitted at trial that Debbie cohabited with a long-time boyfriend. This examination seems to allege that Heather’s mother engaged in a morally “improper” monogamous relationship without benefit of marriage. In light of Mississippi case law, the relevance of any evidence to a romantic relationship of a grandparent appears quite suspect unless a negative impact on the children is shown. Brekeen, 880 So.2d at 284 (¶ 6). Certainly Debbie’s actions are not imputed to Heather, and even if such actions were imputed to Heather, *153 they fail to satisfy a legally proper basis for an award of custody in accordance with precedent without evidence of some adverse impact on the children. I am concerned, however, that the attempts to raise the marital fault issue of adultery and to raise the issue of Debbie’s lifestyle constitutes an attempt to paint Heather as a bad person in an effort to show that she is morally unsuitable to receive custody of the children. Punishment of the offending spouse also fails to serve as a sufficient basis for an award of custody.[10] Albright, 487 So.2d at 1005.
¶ 56. My concern that impermissible considerations formed the basis for this custody award arise from not only the repeated use of marital fault by Alex in his efforts as a basis to award custody to Alex, but my concern is also raised by the evidence presented showing the defects in Alex’s parental fitness and mental health, which were not encompassed within the chancellor’s findings. The chancellor awarded custody to Alex, even though he previously had pled guilty in justice court, as noted above, to domestic violence stemming from an incident in which he had beaten Heather with a belt in front of the children. Evidence in the record also reflects testimony that Alex consumes beer almost daily and becomes hostile after consuming too much alcohol. Additional evidence of Alex’s violent temper appears in the record, such as his irrational anger over having his jeans folded and placed on top of the dryer, instead of hanging them in his closet. The record also shows that Alex would give or throw away the children’s toys or would put the toys in the attic because he did not want a messy house. Alex also testified that he sleeps in the same bed with his daughters. The record contains testimony that Alex wanted nothing to do with the pregnancy or raising of his third child, and this child was confused as to her father’s feelings towards her. The parenting behavior of Alex and evidence in the record pertaining to his temper and alcohol consumption raise concern in light of the previously noted physical abuse of Heather in front of the children. The record shows that Alex even testified that the girls would be better off with their mother. Recognizing that the parents may seek what lies in his or her best interest as opposed to their children’s best interests, a guardian ad litem could assist the chancellor in evaluating these issues pertaining to the parental fitness of each and then provide recommendations to assist the chancellor.
¶ 57. In her supplemental findings, the chancellor commented upon yet another subsequent incident of domestic violence.[11] A justice court sentencing order contained in the record reflects that this subsequent incident pertains to stalking and telephone harassment.[12] The parties’ counsel referenced this subsequent incident during oral argument before this Court. Such evidence as noted in the justice court’s sen *154 tencing order raises concerns as to the provisions for the children’s safety and best interests and the need for evaluation of Alex’s parental fitness and mental fitness, particularly as to Alex’s temper and alcohol consumption.
¶ 58. Heather asserted that the chancellor failed to weigh the Albright factors, and had the factors been properly weighed, physical custody would have been awarded to Heather. The evidence clearly showed that Heather was the primary caretaker of the four children and that while fulfilling her duty as primary caretaker, she also attended school fulltime in order to obtain a teaching degree, with little to no assistance from Alex. The record showed that Alex was generally unsup-portive, and he told Heather that she was not smart enough to get her degree. Heather testified that Alex considered caring for the home and children to be a woman’s job and, thus, Heather’s responsibility. Alex’s testimony showed that Heather paid the children’s school and medical expenses, worked a full-time job, and kept the house for six people. Upon the death of her father in 2005, she suffered emotional depression. Heather required the help of others to attend to the demands and needs of her four children. Again, displaying a lack of support, Alex refused to take Heather to the mental-health professional for treatment, leaving others to step in and assist.
¶59. In support of awarding physical custody to Alex, the chancellor found that Heather’s emotional problems stemming from her father’s death negated that Heather had been the primary caretaker for the children up to that point; thus, she held that this factor favored Alex. The chancellor’s findings noted that Heather testified that she had recovered from her father’s death, but Heather had not returned to the level of performance prior to his death. However, in addressing Alex’s moral or mental fitness, the findings contain no references to his alcohol consumption or anger issues.[13] Testimony showed that Heather had overcome her prior depression,[14] and she no longer required medical care or medication. The record shows that Heather was working as a teacher. The chancellor additionally observed that Heather had enjoyed an undeniably close relationship with her children. The evidence further showed that Heather attended church every Sunday and taught Girls in Action, a mission group for young girls, on Wednesday nights; and Alex attended church about once per month.
¶ 60. Alternatively, the record reflects no evidence that Alex has ever received any counseling for his alcohol consumption, anger, or parenting skills. The pattern of Alex’s problems sends a message that seeking professional help will cause a stigma. I note that children are often left at risk when courts ignore substance abuse and anger issues in evaluating parental mental fitness. Parents who refuse to seek help or refuse to acknowledge a prob *155 lem or addiction, despite a pattern of negative harmful parental behavior, are thereby rewarded.
¶ 61. With respect to stability and employment, the record shows that Heather is employed as a teacher in Pike County. She changed teaching jobs because the principal at her previous school was Alex’s relative and caused contention in her employment. Heather nonetheless obtained another teaching job in the same geographic area in southwest Mississippi. She and Alex both now work in the same county, and Alex works at the school where Heather proposes to place the children should she be awarded custody. The chancellor’s findings fault Heather for leaving the marital home and relinquishing any claim for ownership or possession of the house in the divorce and asserts that her job changes were irresponsible. The findings assert that the children would lose their home, church, school and their friends in addition to the loss of their parents’ marriage. However, the record reflects that even though Heather proposes to place the children in school in Pike County, they would not be uprooted from all they know. The record shows Heather intends to remain in the same geographic area in southwest Mississippi with stable employment and that the children would attend the school where their father works.
¶ 62. In turning to the statutory presumption set in place when a parent seeking custody of a child has a history of perpetrating family violence, the evidence in the record of Alex’s violent conduct must be addressed in any award of custody to him to ensure the best interests of the children are served. Since the primary concern is the safety of children, the Legislature codified factors for chancellors to consider in awarding custody when domestic violence is present. See Miss.Code Ann. § 98-5-24(9). In so doing, the Legislature created a rebuttable presumption against an award of custody to a parent with a history of domestic violence.[15] Id. See, e.g., Lawrence v. Lawrence, 956 So.2d 251, 262-68 (¶¶ 41-43) (Miss.Ct.App.2006); Cockrell v. Watkins, 936 So.2d 970, 973 (¶¶ 10-14) (Miss.Ct.App.2006); C.W.L. v. R.A., 919 So.2d 267, 271-72 (¶¶ 13-17) (Miss.Ct.App.2005). The chancellor must evaluate these factors in determining whether the evidence sufficiently rebuts the presumption against awarding custody to the parent with a history of domestic violence. The Mississippi Supreme Court embraced the rebuttable presumption created by this statute, which is intended to protect the often voiceless child[16] in dispute in a divorce, and the court has applied its requirements to cases in which evidence *156 of domestic violence exists.[17] See J.P. v. S.V.B., 987 So.2d 975, 981-82 (¶ 16) (Miss.2008). We, therefore, embrace precedent in applying the rebuttable presumption against awarding custody to a parent with a history of domestic violence.
¶ 63. The Mississippi Supreme Court has held that a failure to specifically address each factor in section 93-5-24(9)(a)(iii) may likely result in reversal unless the record before the court can “safely say that while the chancellor did not specifically refer in writing to all the factors enumerated in her judgment, she no doubt considered those factors in making the custody determination.” J.P., 987 So.2d at 981-82 (¶ 16). In the present case, I submit that factually, the evidence does not substantially support the chancellor’s finding that Alex rebutted the presumption against awarding custody to a perpetrator of family violence. See Deborah H. Bell, Bell on Mississippi Family Law § 5.01 [4][c] at 95 (2005).
¶ 64. I recognize that the standard of review in child-custody cases is narrow, and “[rjeversal of a chancellor’s judgment requires that the chancellor be manifestly wrong or have ‘applied an erroneous legal standard.’ ” Robison, 841 So.2d at 1122 (¶ 9). Further, “[a]n appellate court is to affirm findings of fact by chancellors in domestic cases when they are ‘supported by substantial evidence, unless the chancellor abused her discretion, was manifestly wrong, clearly erroneous or an erroneous legal standard was applied.’ ” Id. The chancellor must “ascertain whether witnesses and evidence are credible and the weight to give each.” Id. With these standards in mind, the court in Robison cautioned the appellate courts to remember that they also bore the responsibility, like the chancellor, to make the best interest of the child the polestar consideration. Id.
¶ 65. I am not convinced that the evidence supports a finding that Alex overcame the rebuttable presumption against awarding custody to a parent with a history of domestic violence. In acknowledgment of the difficulty faced by a chancellor in determining custody, I also fear that the issues of marital fault in this case clouded the proper analysis of the Al-bright factors in determining the best interests of the children. Therefore, in light of the responsibilities set forth above, I would reverse the chancellor’s judgment and remand this case to the chancellor for appointment of a guardian ad litem to assist the chancellor in determining the best interests of the children for purposes of the custody determination.

.The Mississippi Volunteer Lawyers Project’s web site, www.mvlp.net, provides a source for finding assistance in civil cases where financial need exists.

. Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983).

. Mississippi Code Annotated section 93-5-24(9) (Rev.2004).

. Alex's allegations regarding Heather's affairs fail to constitute a basis for consideration for custody unless evidence shows that the conduct affected the children. See Brekeen v. Brekeen, 880 So.2d 280, 284 (¶ 6) (Miss.2004). The record appears skimpy on any alleged adultery, and the only such relationship with any evidentiary legs occurred after the couple's separation and reflected no impact on the children. Adultery indeed constitutes a ground for divorce and shows a failure in the spousal relationship. Miss.Code Ann. § 93-5-1 (Supp.2009). However, such allegations or evidence of adultery cannot form the basis of a custody decision without evidence of impact upon the children. Brekeen, 880 So.2d at 284 (¶ 6). No such evidence exists in this case.

. During oral argument, Heather’s counsel asserted that he feared that the chancellor possessed a bias toward Heather due to evidence heard in an unrelated case. However, the record before us contains no evidence of bias or matters pertaining to an unrelated case.

. Precedent has allowed marital fault to be considered in the equitable division of assets, but not child custody. The polestar consideration in child-custody decisions remains the best interests of the children. Albright, 437 So.2d at 1005.

. Counsel for the parties referenced this subsequent incident mentioned in the chancellor’s supplemental findings and asserted that the incident involved alcohol and threats upon exchange of the children. However, we are limited to the record, which contains the chancellor’s reference discounting the subsequent incident. The documentation from justice court reflects a sentencing order for stalking and telephone harassment, with instructions for the exchange of the children.

.As previously noted, this order was remanded to the file upon request that the exchanging of the children occur at the sheriff’s office.

. I also note that the chancellor found that Alex was more capable and willing to provide for the children, yet scolded him for failing to abide by a court order to pay temporary support.

. Oddly, the chancellor’s earlier letter opinion commented that Heather should have turned to her husband in her time of suffering during her depression after the loss of her father. This comment pertains to breakdown of the marital relationship, but not to custody determinations. This comment also contains assumptions as to Alex’s ability to provide spousal emotional support. Testimony shows that: Alex failed to support Heather's treatment by a mental-health professional; Alex refused to support the pregnancy and birth of their third child; and Alex mocked Heather’s attempts to get an education.

. Section 93-5-24(9)(a)(iv) requires written findings to show consideration of the enumerated factors in evaluating the evidence as to whether the presumption was overcome. See J.P. v. S.V.B., 987 So.2d 975, 981 (¶ 16) (Miss.2008). In so doing, the supreme court acknowledged that the court, like the chancellor, possessed a duty to make the best interest of the child the polestar consideration. Id. The supreme court certainly possesses the authority to establish precedent for lower courts to follow.

. Section 93 — 5—24(9)(d)(i) suggests actions that a court may take in determining visitation orders to ensure a protected setting. The statute further provides that the chancellor may award visitation to the parent with a history of domestic violence only if adequate provisions are made for the safety of the children as well as the parent who was a victim of domestic or family violence. Id. The actions include ordering "the perpetrator of domestic or family violence to attend and complete to the satisfaction of the court a program of intervention for perpetrators or other designated counseling as a condition of visitation.” Miss.Code Ann. § 93-5-24(9)(d)(ii)(3).

. A history of family violence includes a pattern of violence or one incident resulting in serious bodily injury. See Deborah H. Bell, Bell on Mississippi Family Law § 5.01[4][c] at 95 (2005). If the presumption is raised and not rebutted, custody should be awarded to the nonviolent parent without consideration of the Albright factors. Id. In the present case, die chancellor's initial findings were set forth in a letter opinion, but it did not provide any analysis as required by Powell and Al-bright. Heather asserted that the chancellor failed to weigh the Albright factors, and she claimed that had the factors been weighed, physical custody would have been awarded to her.