KITCHENS, JUSTICE,
DISSENTING:
¶ 64. I dissent with respect. I disagree with the majority’s holding that no charges of neglect were raised in this case. The record plainly discloses that such charges did arise during the trial and their presence required the chancellor to appoint a guardian ad litem pursuant to Mississippi Code Section 93-5-23 (Rev. 2013). I agree with the majority’s holding that, because Josh Carter failed to' object in the trial court to Jennifer Carter’s late filing of the supplemental motion for a new trial that raised this issue, he is procedurally barred from raising the issue of timeliness on appeal. But because Josh Carter’s argument is procedurally barred, it is unnecessary for the Court to determine the issue of whether a trial court may consider a new ground for relief raised in a supplemental motion under Rule 59 of the Mississippi Rules of Civil Procedure.
¶ 65. In a child custody case, the best interest of the child is the polestar consideration. Robison v. Lanford, 841 So.2d 1119, 1122 (Miss. 2003). Mississippi Code *762 Section 93-5-23 provides that: “The court may investigate, hear and make a determination in a custody action when a charge of abuse and/or neglect arises in the course of a custody action as provided in Section 43—21—15Í, and in such cases the court shall appoint a guardian ad litem for the child as provided under Section 43-21-121, who shall be an attorney.” Miss. Code Ann. § 93-5-23 (Rev. 2013). This Court has expressed that “[t]he importance of guardian ad litem appointments in child custody proceedings cannot be overemphasized.” Robison, 841 So.2d at 1126. Indeed, when charges of neglect arise in a child custody action, appointment of a guardian ad'litem is mandatory. Miss. Code Ann. § 93-5-23; Robison, 841 So.2d at 1126. This Court will reverse the decision of a chancellor when that decision is manifestly wrong or the chancellor applied an incorrect legal standard. Id. at 1122.
¶ 66. Josh Carter filed his motion seeking to modify custody of his six-year-old daughter Delaney Carter based on a material change in circumstances.[9] Josh Carter alleged no facts in his motion that could have constituted a material change in circumstances. But at the trial it became clear that the basis for Josh Carter’s motion was his contention that Delaney’s mother, Jennifer Carter, had not provided a safe, clean home for Delaney, and that the mother had not provided the child adequate medical care, resulting in Delaney’s medical diagnosis of failure to thrive. These were charges of neglect. Repeatedly, throughout the trial, the parties and the chancellor recognized that the father was trying to prove neglect. The father offered extensive testimony that Delaney was not receiving proper medical care and that the mother repeatedly had skipped dental and doctor’s appointments and had failed on several occasions to obtain medical treatment for Delaney when she was ill. Additionally, Josh Carter attempted to prove that Jennifer Carter had neglected to provide adequate nutrition for Delaney. Josh Carter questioned Dr. Dixit extensively about her diagnosis of failure to thrive in an attempt to show that Delaney’s condition was attributable to the mother’s negligent care. The inspector’s report bolstered Josh Carter’s allegations of neglect, concluding that “[t]he .yard surrounding the mobile home was not a safe place for a child with car parts, trash, dirty blankets, bottles, old appliances, pipes lying around ... [and] the inside of the trailer was also generally not safe for a minor child with water leaks with mold, dirty clothes, dirty and clean dishes everywhere, no air condition[ing] running.” Josh Carter testified that he was “terrified” that Delaney was not receiving the care she needed. And Jennifer Carter recognized in her testimony that the basis of Josh Carter’s modification action was his charge that she had failed to care for Delaney adequately.
¶ 67. In his ruling, the chancellor stated that Josh Carter alleged that Delaney was not being properly cared for and found that Jennifer Carter’s placement of Delaney in unsafe conditions constituted a material change in circumstances that triggered an Albright analysis. The chancellor described the mobile home in which Jennifer had lived with Delaney for a year as “squallerly and dangerous, shocking ... unsafe .,. dangerous to a child, unkempt, *763 junky, unhealthy, deplorable, almost uninhabitable.” The chancellor found that Delaney had been kept in these conditions for more than a. .year, during which-time she had suffered numerous respiratory infections. The chancellor stated that “it is a per se adverse influence to this little girl’s best interest to live in that kind of environment.” And in the Albright analysis the chancellor took into" account Josh Carter’s testimony that, Jennifer Carter had not provided Delaney with proper medical care, finding that the father had a better ability to assure that Delaney received proper health care..
¶ 68. The majority finds that a charge of neglect did not arise.in this case.' But instead of analyzing whether charges of neglect arose, the majority erroneously, relies on its conclusion that neglect was not proven to And that no guardian' ad litem was required. This analysis is incorrect, because it confuses a charge of neglect with proof of neglect. Section 93-5-23 does not require that neglect must be proven before requiring the. appointment of a guardian ad litem is required; rather, a guardian ad litem must be appointed when “a charge of ... neglect arises.” Miss. Code Ann. § 93-5-23. While, as the majority reasons, the chancellor has discretion to decline to appoint a guardian ad litem when faced with nothing more than an unsubstantiated assertion of neglect in the pleadings, Johnson v, Johnson, 872 So.2d 92, 94 (Miss. Ct. App. 2004), in this case, neglect was a legitimate and fundamental issue at the trial. Moreover, the fact that Josh Carter sought a change in custody due to a material change in circumstances that adversely affected Delaney did not relieve the chancellor of his duty to appoint a guardian ad litem• Section 93-5-23 contemplates that a charge of neglect may arise during child custody proceedings. The statute. specifically entrusts chancellors with the duty to recognize and appropriately address neglect charges that arise in this context,
¶ 69. It is manifest from Josh Carter’s testimony, the inspector’s report, -and Josh Carter’s questioning of Dr. Dixit at her deposition that a charge of neglect was present in this case. The basis of Josh Carter’s modification argument was that Jennifer Carter had neglected Delaney. The chancellor’s findings reflect his recognition of Josh Carter’s allegation that Jennifer Carter had provided an unsafe home and insufficient medical care for Delaney. The chancellor erred by failing to order the appointment of a guardian ad litem to represent Delaney’s interests. “The appointment of a guardian ad litem allows for the child to be represented and for the child’s voice to be heard by the court through an independent party.” Robison, 841 So.2d at 1126. In this case, despite Josh' Carter’s charges that his daughter was neglected, her voice never was heard because no guardian ad litem was appointed. I would reverse and remand for the appointment of a guardian ad litem, followed by a new trial.
DICKINSON, P.J., AND KING, J., JOIN THIS OPINION.

. In custody modification actions, "the prerequisites [are] (1) proving a material change in circumstances which adversely affects the welfare of the child and (2) finding that the best interest of the child requires the change of custody.” Brocato v. Brocato, 731 So.2d 1138, 1141 (Miss. 1999) (quoting Wright v. Stanley, 700 So.2d 274, 280-81 (Miss. 1997)). The best interest of the child is determined with reference to the factors in Albright v. Albright, 437 So.2d 1003, 1005 (Miss. 1983). Brocato, 731 So.2d at 1141.