# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2020-CT-00675-SCT

*JASON CLINT DENHAM*

*v.*

*REBECCA PRUETT DENHAM*

### ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 06/18/2022 |
| TRIAL JUDGE: | HON. DEBORAH J. GAMBRELL |
| TRIAL COURT ATTORNEYS: | SHEILA HAVARD SMALLWOOD |
| | SHAWN M. LOWREY |
| | KRISTIN MICHELLE McGEE |
| | SARAH LINDSEY HAMMONS |
| | HELEN VIRGINIA KRAMER |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JEFFREY BIRL RIMES |
| | SARAH LINDSEY HAMMONS |
| ATTORNEY FOR APPELLEE: | JOHN D. SMALLWOOD |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 12/01/2022 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**KING, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     In this divorce and custody case, the chancellor excluded the testimony of the parties'

minor children *per se*, without first interviewing the children and determining their

competency and best interests.  The chancellor then interviewed the children in chambers,

but did not make a record of the interviews.  The Court of Appeals affirmed the chancellor's

decision on all issues, including child custody. On certiorari review, we find that the chancery court erred in the procedures used and findings made attendant to the issue of the children's testimony. We therefore reverse the chancellor's judgment regarding child custody, and we remand the case for proceedings consistent with this opinion.

### FACTS AND PROCEDURAL HISTORY

¶2. The recitation of facts is taken largely from the Court of Appeals' opinion.

Becky and Jason were married on July 9, 2002. Three children were born to their marriage.

Becky and Jason separated on July 31, 2017, and Becky filed her complaint for divorce on November 7, 2017. In her initial complaint for divorce, Becky alleged only irreconcilable differences. In December 2017, the chancellor entered a temporary order granting the parties joint legal custody and joint physical custody of the three minor children. The chancellor also entered an order appointing a guardian ad litem (GAL).

On February 6, 2018, Becky filed an amended complaint for divorce, adding allegations of the fault-based grounds of adultery and habitual cruel and inhuman treatment. Jason did not file an answer or assert any affirmative defenses to Becky's initial complaint or her amended complaint.

On May 29, 2018, the chancellor entered an agreed order setting a trial date of November 14, 2018.

On October 15, 2018, approximately one month before trial, Jason's counsel filed a motion to withdraw as counsel. On October 26, 2018, the GAL also filed a motion to withdraw. In her motion to withdraw, the GAL asserted that she had "recently received communication from one of the litigants which caused the [GAL] to be unable to proceed in this case." The GAL explained that "[t]he communication was, at the worst, threatening, and at the best, improper." After a hearing on November 5, 2018, the chancellor entered an order that same day allowing the withdrawal of Jason's counsel and an order allowing the GAL to withdraw after the offering of the GAL's preliminary report at the beginning of the trial in this matter.

A three-day trial was held in November 2018. On November 14, 2018, the first day of trial, the chancellor heard testimony from the GAL. Jason had not obtained new counsel at this time, and he moved for a continuance. The chancellor denied his motion, and Jason represented himself pro se. After the GAL's testimony, the chancellor then ordered that the trial reconvene on Tuesday, November 27, 2018. By the time the trial reconvened, Jason had retained new counsel.

On November 27 and 28, 2018, the chancellor heard testimony from Jason; Becky; Becky's sister, Lissa Ortego; the Denhams' neighbor, Brett Bean; Paula Henderson, the wife of Jason's co-worker; Bryan Page, Jason's former co-worker; and Jason's aunt, Cindy Belcher. Jason requested that the chancellor interview the children on-the-record. Becky objected to the children being interviewed and to the interview being on-the-record. The chancellor agreed to interview the children in camera, but the chancellor denied Jason's request for the interview to be on-the-record.

*Denham v. Denham*, No. 2020-CA-00675-COA, 2022 WL 290890, at *1-2 (Miss. Ct. App. Feb. 1, 2022).

¶3.    In making the determination whether the children would testify, the chancellor, before meeting the children, stated that

I have to decide is it in the child's best interest to testify?  The answer is no. Is the child competent?  I would have to make that determination.  As it relates to the middle child and the little, I would *automatically* say no.  Is it really necessary to subject the child to that experience?  No.

So I've got - - I've answered all of that already before I even decide to go in camera.

(Emphasis added.)  The chancellor then reiterated this position multiple times, all prior to ever meeting the children.  When Jason's attorney moved for the children's interviews to be on the record and cited caselaw in support of such a motion, the chancellor replied "[n]o." She then explained that "there's no way in the world that I'm going to have a record of

3

children testifying in a divorce action that they will have access to in 15 to 20 years from now, it is not going to happen."

The chancellor ultimately interviewed the children off the record and out of the presence of the parties, with only the parties' counsel and a court staff attorney present.

On December 17, 2018, the chancellor entered her findings of fact, conclusions of law, opinion, and final judgment. In her order, the chancellor granted Becky a divorce on the ground of uncondoned adultery. The chancellor awarded the parties joint legal custody of the three minor children. The chancellor awarded Becky sole physical custody of the children and awarded Jason "visitation as may be agreed upon between the parties/parents." The chancellor "encourage[d] the parties to work together to schedule visitation that is beneficial to the children and agreeable to all involved." The chancellor provided, however, that if the parties were "unable to agree on reasonable visitation times and circumstances for the children with Jason, then Jason shall be entitled to the following visitation: Weekend custodial visitation commencing on Thursday at 6:00 p.m. and ending on Sunday at 6:00 p.m. on every other weekend." The chancellor also set forth a holiday visitation schedule, which included four weeks of summer visitation for Jason.

In making her custody determination, the chancellor considered and applied the factors as set forth in ***Albright***.[1] The chancellor found that the factors were either neutral or favored Becky. The chancellor did not adopt the findings and recommendation of the GAL, explaining:

> Because the [c]ourt allowed [the GAL] to withdraw and testify at the outset of trial (and thus the GAL was not privy to the rest of the testimony and evidence presented at trial and had no opportunity to weigh in on whether such would alter her preliminary recommendation), the [c]ourt shall not adopt the findings and recommendations of the [GAL] as presented in her Report (Exhibit 2) and per her testimony. The ***Albright*** analysis below is thus the [c]ourt's own.

---

[1] ***Albright v. Albright***, 437 So. 2d 1003 (Miss. 1983).

*Denham*, 2022 WL 290890, at \*2 (alterations in original). The chancery court found that the

moral fitness factor favored Becky, noting that

> [a]lthough both parties admit to infidelity during the marriage, Becky's
> consisted of a single one-night stand several years ago, after which the parties
> reconciled, while Jason has been involved in numerous sexual trysts, including
> those that ultimately caused the demise of the marriage. The [c]ourt also heard
> testimony regarding Jason's use of pornography and online dating websites.

Regarding the oldest child's preference, the chancery court stated that "the oldest child of the

parties did not indicate a preference to live with one parent or the other."

> Jason filed a motion for a new trial or, in the alternative, to alter or
> amend the judgment and to stay the judgment, asserting the following: the
> chancellor erred in denying Jason's request to grant a continuance; the
> chancellor erred by only allowing Jason less than half of a day to present
> evidence and witnesses in support of his case; the chancellor erred and unfairly
> prejudiced Jason when she excluded Jason's evidence of Becky's marital
> misconduct relating directly to the . . . *Albright* factors; the chancellor erred
> by excluding the testimony of the minor children, specifically the parties'
> eldest child; the chancellor erred in her application of the *Albright* factors; the
> chancellor erred by not awarding the parties joint physical custody; the
> chancellor erred in her determination and division of the marital estate; the
> chancellor erred by summarily ordering Jason to pay health insurance and
> maintain life insurance without making on-the-record findings as to the cost;
> and the chancellor erred in her determination as to the child support award and
> alimony award. The parties both filed several post-trial motions relating to the
> chancellor's December 17, 2018 order.

*Denham*, 2022 WL 290890, at \*3. The chancellor consequently entered two orders

amending the final judgment, with all amendments addressing financial issues.

¶4.    Jason appealed, asserting eight assignments of error, and a majority of the Court of

Appeals affirmed the chancellor's judgment. *Id.* at \*16. Presiding Judge Wilson dissented

in part, arguing that the chancellor erred in her handling of the children's testimony and

5

interviews and in her limiting evidence of Becky's alleged extramarital affairs in making a showing regarding the moral fitness factor to determine custody. *Id.* at \*16-21 (Wilson, P.J., concurring in part and dissenting in part). The partial dissent would have reversed the chancellor's judgment and remanded for a new trial on the issue of custody. *Id.* at \*21.

¶5.    After the Court of Appeals denied his motion for rehearing, Jason filed a petition for certiorari with this Court. He raises three issues: (1) whether the decision of the Court of Appeals regarding the children's testimony and interview contradicts settled caselaw from this Court; (2) whether the Court of Appeals failed to follow this Court's precedent when it affirmed the chancellor's exclusion of evidence of Becky's extramarital affairs to show moral fitness; and (3) whether the Court of Appeals failed to follow the proper legal standard by finding the chancellor's denial of a continuance proper. We granted certiorari primarily to address whether the decision of the Court of Appeals and the judgment by the chancellor regarding the children's testimony and interviews is in conflict with Supreme Court decisions. *See* Miss. R. App. P. 17(a)(1), (h) ("The Supreme Court may limit the question on review.").

## ANALYSIS

### A.    Standard of Review

¶6.    In child custody cases, this Court will reverse a chancellor's judgment only if it is manifestly wrong or the chancellor "applied an erroneous legal standard." *Robison v.*

*Lanford*, 841 So. 2d 1119, 1122 (Miss. 2003) (internal quotation marks omitted) (quoting *Lee v. Lee*, 798 So. 2d 1284, 1288 (Miss. 2001)).

**B.      Children's Testimony**

¶7.      Having minor children of the parties testify in divorce proceedings between their parents is a highly disfavored practice. *Jethrow v. Jethrow*, 571 So. 2d 270, 272-73 (Miss. 1990). However, courts cannot apply a "*per se* exclusion simply because [the witness] is a child of the divorcing parents" because such a *per se* prohibition "risks offending the due process provisions of Amendment V and XIV of the U.S. Constitution, and Art. 3, Sec. 14 of the Mississippi Constitution." *Id.* at 273. Every litigant has a right "to compulsory process for witnesses and [to] have them testify under oath in court[.]" *Id.* "While disapproving the practice and suggesting to trial counsel and trial courts to attempt to avoid doing so, Courts generally have held that a parent in a divorce proceeding has a right to call children of the marriage as witnesses." *Id.* Before a chancellor can exclude "the testimony of a child witness of tender years in a divorce proceeding, the chancellor" must first determine whether the child is competent to testify. *Id.* To do so, the chancellor should "at least . . . conduct an *in camera* conference with the child to determine the competency of the child, as well as the competency of any evidence which the child might present." *Id.* (quoting *Crownover v. Crownover*, 337 N.E.2d 56, 59 (Ill. App. Ct. 1975)). The chancellor should further "determine whether the best interests of the child would be served by permitting her to testify or be sheltered from testifying and being subjected to a vigorous

cross-examination." *Id.* (quoting *Crownover*, 337 N.E.2d at 59). The chancellor should make a record of

> the essential material matters developed at the *in camera* conference . . . and the court should state the reasons for allowing or disallowing the testimony of the child, and also note the factual information which the court developed from the conference with the child which would be considered by the court in its ultimate determinations in the case.

*Id.* at 273-74 (quoting *Crownover*, 337 N.E.2d at 59).

¶8.     This Court later clarified that when a chancellor interviews a child in camera, a record of that interview "*must* be made and become a part of the record." *Robison*, 841 So. 2d at 1125 (emphasis added). This Court mandated that for in-chambers interviews of children, "[a] record must be made by a court reporter physically present during the in-chambers interview." *Id.* Such a record is "essential" so that "appellate courts have a complete and accurate record when reviewing child custody judgments." *Id.* at 1122. To address privacy concerns, this Court granted chancellors the discretion to seal the record of the interview. *Id.* at 1125-26.

¶9.     In this case, the chancellor made a determination regarding the children's competency to testify and best interests surrounding testifying *before* interviewing or even meeting the children. The clear legal standard is that the chancellor must interview a child of tender years in order to determine both competency and the child's best interests. The chancellor's determination that the children were incompetent to testify and that testifying was not in their best interest *before* interviewing them clearly contravened this Court's mandates in *Jethrow*;

8

thus, the chancellor applied an erroneous legal standard in coming to her determination. Furthermore, the refusal to record the in-chambers interviews with the children by use of a court reporter clearly contravened this Court's mandate in *Robison*, further compounding the chancellor's application of erroneous legal standards and depriving this Court of a complete appellate record.

¶10. The Court of Appeals found that the failure to record the children's testimony was harmless error. *Denham*, 2022 WL 290890, at *9. Yet, it is impossible for this Court to review what the chancellor considered when we do not have a record before us due to the chancery court's failure to make that mandatory record. *See Robison*, 841 So. 2d at 1122-23, 1125. One noteworthy issue is that the oldest child's preference was recorded differently in the GAL report and in the chancellor's final judgment. The GAL's report indicated a preference for joint custody, in other words, for equal time with both parents. The chancellor's judgment found that the child expressed no preference for either parent, which is a different matter than expressing a preference for equal time with both parents. Without a record of the in-chambers interview, it is impossible for this Court to know which is accurate.

¶11. We reiterate that parents in a divorce proceeding should if at all possible refrain from calling any of the children of their marriage, of tender years at least, as witnesses, and counsel should advise their clients against doing so except in the most exigent cases. The reason and wisdom behind this precaution need no amplification.

*Jethrow*, 571 So. 2d at 274.  With that warning in mind, we also reiterate "that no parent can be precluded from having a child of the marriage in a divorce proceeding testify simply because of that fact."  *Id.*

¶12.   Because the chancery court erred both in how it made the initial determination that the children may not testify and by failing to record the in-chambers interviews of the children, we cannot agree that these errors were harmless, especially because we have no record of what the chancellor relied on in those interviews with which to conduct a harmless error analysis.[2]

## C.   Teenager's Testimony

¶13.   In 1945, this Court decided *Powell v. Powell*, in which it held that "the rule against permitting children of tender years to testify in a divorce proceeding between their parents has no application to a child as far advanced in years as the witness here involved . . . ." *Powell v. Powell*, 198 Miss. 301, 22 So. 2d 160, 160 (1945).  The Court found that a fifteen-year-old was competent because "the child is able to properly evaluate the facts . . . ." *Id.* Presiding Judge Wilson's partial dissent argued that, pursuant to *Powell*, "Jason's right to call P.S. as a witness was not subject to the chancellor's discretion." *Denham*, 2022 WL 290890,

---

[2]We further agree with the Court of Appeals' partial dissent that Jason's failure to make a proffer of the children's testimony does not preclude our addressing this issue.  His ability to do so "was limited because the chancellor had 'specifically enjoined and ordered' the parties not to discuss any 'issues surrounding the issues contained in the divorce, including custody, with their children.' . . . Jason's attorney did the best she could under the circumstances." *Denham*, 2022 WL 290890, at *19 (Wilson, P.J., concurring in part and dissenting in part).

10

at *18 (Wilson, P.J, concurring in part and dissenting and part). In deciding ***Powell***, the Court relied on a law permitting a child aged fourteen or older to select his own guardian, and the fact that a child aged fourteen and older can be held accountable for crime without the State proving his capacity. ***Powell***, 22 So. 2d at 160. The current versions of these laws are more nuanced. First, it is no longer true that a child of a certain age has a near absolute right to choose his guardian. Prior to 2006, the law stated that if a court found both parents to be fit, proper, and able to provide for a child "then any such child who shall have reached his twelfth birthday *shall* have the privilege of choosing the parent with whom he shall live." Miss. Code Ann. § 93-11-65(1)(a) (Rev. 2004) (emphasis added). The law was changed to provide that, if both parents are fit, proper, and able to provide, "the chancellor *may consider* the preference of a child of twelve (12) years of age or older as to the parent with whom the child would prefer to live . . . . The chancellor shall . . . explain in detail why the wishes of any child were or were not honored." Miss. Code Ann. § 93-11-65(1)(a) (Rev. 2021) (emphasis added). Second, with certain exceptions, it is discretionary whether children aged thirteen to seventeen may be held criminally responsible for most crimes. Miss. Code Ann. §§ 43-21-105(d), -151 (Rev. 2021). In general, children under the age of eighteen who are properly under the jurisdiction of the youth court for crimes may not be held criminally responsible. *Id.*

¶14.    This Court has never defined "tender years" in terms of testimony in a divorce proceeding. In terms of the hearsay exception found in Mississippi Rule of Evidence

803(25), "[w]here a child is under the age of twelve, there is a rebuttable presumption that the child is of tender years, and where a child is twelve or older, a trial court must make a factual determination as to whether the person is of tender years based on mental age." *B.R.C. v. State (In re S.C.)*, 795 So. 2d 526, 532 (Miss. 2001). Children aged twelve and under may not be held criminally responsible for crimes. Miss. Code Ann. § 43-21-151(3) (Rev. 2021). We hold that, generally, in this context, "tender years" refers to children younger than twelve.

¶15. However, chancery courts have the authority to make orders touching the care, custody, and maintenance of the children of a marriage until the emancipation of a child. Miss. Code Ann. § 93-5-23 (Rev. 2021). Under most circumstances, such emancipation occurs when a child attains the age of twenty-one, or the age of eighteen if the child discontinues full time school enrollment. Miss. Code Ann. § 93-11-65(8) (Rev. 2021). In any event, absent specific circumstances, a chancery court generally has jurisdiction over a child of divorced parents until at least the age of eighteen.

¶16. Moreover, it is abundantly clear that "[t]he best interest of the child is paramount in any child-custody case." *Wilson v. Davis*, 181 So. 3d 991, 995 (Miss. 2016) (internal quotation marks omitted) (quoting *Smith v. Smith*, 97 So. 3d 43, 46 (Miss. 2012)). "Indeed, '[t]his is a principle of law so deeply embedded in our jurisprudence that it should not require further elaboration or citation of authority.'" *Wilson*, 181 So. 3d at 995 (quoting *Pendleton v. Leverock (In re Dissolution of Marriage of Leverock & Hamby)*, 23 So. 3d 424, 429

12

(Miss. 2009)). In this vein, the Court in **Jethrow** required chancellors to consider whether the best interests of a child are served by testifying when making a determination as to whether the child should testify. **Jethrow**, 571 So. 2d at 273-74. The best interests of the child being paramount do not disappear when a child attains the age of twelve. We recognize that concerns of competency generally lessen the older the child is, and concerns of competency will usually dissipate or disappear after the age of twelve is attained. Moreover, we recognize that the older the minor child, the more likely the child may be to adequately withstand testifying and being subjected to cross-examination. However, we hold that a parent does not have an absolute right to call an unemancipated minor child to testify in open court in divorce and/or custody proceedings simply because that child is age twelve or older. A chancellor should still consider the best interest of that minor child in determining whether the child should testify in open court in a divorce and/or custody proceeding.

**D.    Moral Fitness Factor**

¶17.    While marital fault may not be used as a sanction in custody awards, the chancellor's decision here as to this issue does not rise to the level of reversible error. **Breeken v. Breeken**, 880 So. 2d 280, 287 (Miss. 2004). In this case, the chancellor found all but three of the **Albright** factors were neutral, but all three of those, including the moral fitness factor, favored Becky. Moreover, the chancellor also relied on testimony that Jason used technology accessible to the children to access pornography and used the children's photographs on online dating websites in finding that the moral fitness factor favored Becky. Thus, the

13

chancellor clearly did not use this factor as a sanction against Jason or as the sole basis of the custody determination; even if this factor was neutral or favored Jason, the remaining *Albright* factors favoring Becky still weighed the total determination in Becky's favor. However, because this Court reverses and remands the case on the issue of custody, we will briefly address the error in the chancery court's failure to allow cross-examination of Becky regarding alleged adultery.

¶18.    While adultery may not be used as a sanction in custody awards, moral fitness "encompasses the charge of adultery." *Carr v. Carr*, 480 So. 2d 1120, 1123 (Miss. 1985). "Adultery of a parent may be an unwholesome influence and an impairment to the child's best interest, but on the other hand, may have no effect. The trial court should consider this factor along with all others when making original custody determinations." *Id.*

¶19.    The chancellor allowed evidence of Jason's adultery into the record, but limited Jason's attempts to adduce evidence of Becky's because he did not plead condonation.  Yet, Jason was trying to adduce the evidence for the moral fitness factor, not as a defense to adultery.  And in this case, the chancellor explicitly referenced Jason's multiple extramarital affairs as compared to Becky's sole one-night stand as one of the reasons that the moral fitness factor favored Becky.  If the trial court is going to consider adultery in its determination of the moral fitness factor on remand, it must allow both parties to present evidence of adultery, rather than arbitrarily restricting only one party from presenting such evidence.

**CONCLUSION**

¶20.    The chancellor applied an incorrect legal standard in determining that the children could not testify.  Compounding that error was the chancellor's refusal to record the in-chambers interviews with the children.  This Court therefore reverses both the judgment of the Court of Appeals and the judgment of the chancery court as to custody only.  We remand the case for further proceedings consistent with this opinion, in which the proper legal standard should be utilized to determine whether the children should testify in open court, should Jason still wish to call the children to testify.  A record shall be made of any in-chambers interviews with the children.

¶21.    **AFFIRMED IN PART; REVERSED AND REMANDED IN PART.**

   **RANDOLPH, C.J., KITCHENS, P.J., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**